J. Daniel Hoven
Chad Adams
Megan Wampler
Browning, Kaleczyc, Berry & Hoven, P.C.
800 N. Last Chance Gulch,
Helena Montana 59624
Telephone: (406) 443-6820
Facsimile: (406) 443-6882
dan@bkbh.com
chad@bkbh.com
meganw@bkbh.com

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| THE STATE OF MONTANA, ex rel., AUSTIN KNUDSEN, ATTORNEY GENERAL<br><br>*Plaintiff,*<br><br>v.<br><br>ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S. LLC; EVERNORTH HEALTH, INC. (FORMERLY EXPRESS SCRIPTS HOLDING COMPANY); EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICES, INC.; EXPRESS SCRIPTS PHARMACY, INC.; MEDCO HEALTH SOLUTIONS, INC.; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, LLC; CAREMARKPCS HEALTH, LLC; CAREMARK, LLC; AND OPTUMRX INC.<br><br>*Defendants.* | Civil Action No. _____ |

1

# NOTICE OF REMOVAL

Pursuant to and in accordance with 28 U.S.C. §§ 1442(a) and 1446, Defendants Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc.[1], and Express Scripts Pharmacy, Inc. (collectively, "Express Scripts") hereby remove *State of Montana ex rel. Knudsen v. Eli Lilly, et al.* (Civ. No. BOV2022-800) from the First Judicial District Court of Lewis and Clark County, Montana, to the United States District Court for the District of Montana, Helena Division. A true and correct copy of Montana's Complaint is attached hereto as **Exhibit A**.

## INTRODUCTION

1. Express Scripts is a significant contractor with the federal government. Express Scripts, Inc. currently contracts with the United States Department of Defense ("DoD") to provide services to members of the DoD's TRICARE health care program across the country, including in Montana. A true and correct copy of the publicly available contract between the Department of Defense and Express Scripts, Inc., Contract No. HT-9402-14-D-0002 (the "TRICARE Contract"), with certain redactions consistent with the Freedom of Information Act, is attached hereto as **Exhibit B**.

---

[1] Plaintiff's Complaint improperly identified Defendant ESI Mail Pharmacy Service, Inc. as "ESI Mail Pharmacy Services, Inc."

2

2. Under the TRICARE Contract, Express Scripts, Inc. provides pharmacy benefit management services for the DoD, including active-duty service members, their families, and veteran retirees. Many of those veterans, including those in Montana, depend on TRICARE for their prescription drugs, including insulin.

3. As subcontractors to Express Scripts, Inc., Defendants Express Scripts Pharmacy, Inc. and ESI Mail Pharmacy Service, Inc. administer the mail order pharmacy portions of the TRICARE Contract. Under said agreement, Express Scripts is directed to charge TRICARE beneficiaries only such copayments as are dictated by the DoD, and to dispense medications purchased by the DoD at rates negotiated directly between the federal government and drug manufacturers.

4. In this action, the state of Montana (through Attorney General Knudsen) (the "State" or "Montana") alleges that the prices paid by the citizens of Montana for certain insulin products are artificially inflated by a sprawling "Insulin Pricing Scheme" involving certain Pharmacy Benefit Managers ("PBMs") and insulin manufacturers.

5. Some of those Montana citizens allegedly injured by the scheme are TRICARE beneficiaries. Certain TRICARE beneficiaries acquire insulin products through the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP") administered by Express Scripts under the TRICARE Contract. The formulary used

for TRICARE beneficiaries, the prices the federal government pays for the insulin products, and critically, the co-payments Express Scripts must ensure beneficiaries pay, are all dictated by federal law and the TRICARE Contract.

6. Montana alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs as a result of the scheme. *See, e.g.*, Compl. ¶¶ 29, 53, 67, 81, 272–74   Montana specifically alleges that such "out-of-pocket" costs include copayments. *Id.* ¶ 272.

7. Montana seeks to recover in this action the out-of-pocket costs of its citizens by requesting the Court to require Express Scripts "to make such financial payments as are authorized by law, including but not limited to damages, punitive damages, restitution, and disgorgement that may be owed to Montana diabetics and the State." Compl. at 121 § C.

8. By seeking to recover out-of-pocket costs any Montana citizen has paid for insulin, Montana necessarily seeks to recover the fixed co-payments contractually mandated by the federal government that Express Scripts must ensure TRICARE beneficiaries pay for insulin products.

9. In addition, Montana asks for a permanent injunction "prohibiting Defendants, their agents, servants, and employees, and all other persons and entities, corporate or otherwise, in active concert or participation with any of them, from engaging in deceptive and unfair trade practices." Compl. at 121 § B.

10. Montana thus also seeks to prohibit Express Scripts from continuing to ensure the collection of co-payments from all Montana diabetics, including TRICARE beneficiaries from whom Express Scripts is contractually required to secure co-payments.

11. Under the TRICARE Contract, Express Scripts had no choice but to ensure the charging of the co-payments from TRICARE beneficiaries that Montana now seeks as restitution and seeks to enjoin permanently.

12. Accordingly, and as more fully explained below, Express Scripts has colorable government contractor immunity and preemption defenses to Montana's claims, permitting Express Scripts to remove the entire action under 28 U.S.C. § 1442(a)(1).

## BACKGROUND

13. On September 29, 2022, the State of Montana (through Attorney General Knudsen) filed a Complaint in the First Judicial District Court of Lewis and Clark County, Montana.

14. On October 20, 2022, Montana served a copy of the Complaint on Removing Defendants Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.

15. The State brings its action against two categories of defendants: "Manufacturer Defendants" and "Pharmacy Benefit Manager Defendants."

- The State alleges that the "Manufacturer Defendants" are Eli Lilly and Company, Sanofi-Aventis U.S. LLC, and Novo Nordisk Inc.

- The State alleges that the "PBM Defendants" are CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and OptumRx, Inc.

16. Montana alleges a conspiracy between the Manufacturer Defendants and the PBM Defendants to artificially inflate the price of insulin and other diabetes medications. *See* Compl. ¶¶ 6–27. Montana seeks disgorgement, restitution, civil penalties, actual damages, treble damages, punitive damages, and attorneys' fees for claims under the Montana Unfair Trade Practices and Consumer Protection Act (Count I) as well as common law claims for unjust enrichment (Count II) and civil conspiracy (Count III). *See* Compl. ¶¶ 37, 491–518.

17. Montana seeks to recover for its own alleged injuries (*see, e.g.*, Compl. ¶¶ 448–58) as well as for injuries allegedly suffered by Montana diabetics (*see, e.g.*, Compl. ¶¶ 459–64).

18. The Complaint also includes an application for injunctive relief. Compl. ¶ 505.

## VENUE

19. Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the First Judicial

District Court of Lewis and Clark County, the court from which removal is sought. *See* 28 U.S.C. § 106; L.R. 1.2(c)(4).

## **GROUNDS FOR FEDERAL-OFFICER REMOVAL**

20. The federal-officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

21. The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969)). Rather, there "is a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

22. In the Ninth Circuit, a party removing under the federal-officer-removal statute must show that (a) it is a "person" within the meaning of the statute, (b) a causal nexus exists between plaintiffs' claims and the actions defendant took pursuant to a federal officer's direction, and (c) it has a "colorable federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014). Express Scripts satisfies all three elements here.

### A. The Express Scripts Removing Entities are "Persons" Within the Statute's Meaning.

23. Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc. are all "persons" under the federal-officer removal statute because the "person" contemplated by the federal officer removal statute includes corporations. *Goncalves by and through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

### B. A Causal Nexus Exists Between Removing Defendants' Actions Under a Federal Officer and Montana's Claims.

24. To demonstrate a causal nexus between a removing defendant's actions directed by a federal officer and a plaintiff's claims, a removing defendant must show (1) that the defendant was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is "causally connected" with the plaintiff's claims against it. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022).

25. Express Scripts satisfies both elements in this action.

#### 1. Express Scripts Acted Under a Federal Officer.

26. Congress authorizes removal of actions not just by officers of the United States but also "any person acting under that officer." 28 U.S.C. § 1442(a)(1).

27. The words "acting under" are "broad" and the federal officer statute must be "liberally" construed. *Gonclaves*, 865 F.3d at 1245. Private entities are "acting under" a federal officer when involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 143 (2007).

28. The DoD is required by law to engage companies like Express Scripts for the provision of healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. Congress also has required the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g.

29. The DoD contracted with Express Scripts, Inc. to provide pharmacy benefits to members of the DoD's TRICARE health care program across the country, including in Montana. *See* Exhibit B. As of 2017, over 91,000 veterans reside in Montana.[2]

30. Express Scripts provides PBM services and administers TMOP, the DoD's mail-order pharmacy program, under the detailed requirements of the TRICARE Contract and lengthy Statement of Work with the DoD. The Statement

---

[2] *See, e.g.*, National Center for Veterans Analysis and Statistics, Montana State Summary attached as **Exhibit C.**

of Work is "Section C" of the TRICARE Contract and is available on pages 62–120 of Exhibit B.

31. The DoD dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE. The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." Ex. B at § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." *Id.* When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves in a capacity as a "fiscal intermediary *on behalf of DoD* to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries are retail pharmacies." Ex. B at § C.1.6 (emphasis added). Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.*

32. These requirements are all mandated by Congress. 10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Congress not only requires cost-sharing

that favors generics, but it spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

33.   Express Scripts supports TRICARE's pharmacy benefit program under the careful direction of the DoD. When it causes any co-payment to be charged to any TRICARE beneficiary for any product, including the insulin products at issue in this action, it does so in the manner and according to the directions carefully prescribed by the DoD. Ex. B at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure").

34.   For TMOP, Express Scripts must collect co-payments from beneficiaries in accordance with the specific cost-sharing matrix set forth in the

TRICARE Reimbursement Manual ("TRM").[3] *Id.* at § C.8.2 ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"). Express Scripts has a similar obligation to "ensur[e] that the appropriate copayment is collected at retail network pharmacies." *Id.*

35. In short, as the Fourth Circuit recently put it, Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253–54 (4th Cir. 2021).

36. Express Scripts performs the day-to-day administration pursuant to a lengthy and detailed contract from which Express Scripts lacks the discretion to depart. Express Scripts is thus "acting under" a federal officer when carrying out the TRICARE pharmacy program.

---

[3] The matrix included in the TRICARE Reimbursement Manual is available at https://manuals.health.mil/pages/DisplayManualHtmlFile/2021-09-03/AsOf/TR15/C2ADB.html. A true and correct copy of the matrix is attached hereto as **Exhibit D.**

### 2. A Causal Nexus Exists Between Montana's Challenged Acts and Express Scripts' Contractual Obligations

37.  To show a nexus or connection between the conduct and official authority, a defendant need only show that the conduct "relate[s] to" the asserted authority. 28 U.S.C. § 1442(a)(1).  The burden to make this showing is "quite low." *Goncalves*, 865 F.3d at 1244.  A removing defendant only needs to show that the challenged acts "occurred because of what they were asked to do by the Government." *Id.* at 1245 (emphasis removed).

38.  Montana alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs, including higher "deductibles, coinsurance requirements, or *copayment requirements*." Compl. ¶¶ 272–73 (emphasis added).  Montana alleges that as a result of the alleged scheme, "nearly all Montana diabetics have been damaged by having to pay for diabetes medications out-of-pocket based upon the artificial prices generated by the Insulin Pricing Scheme." Compl. ¶ 273; *see also* Compl. ¶ 459 ("all Montana diabetics who pay a part of their diabetic drug costs based on Defendants' artificially inflated list prices have been directly damaged by the Insulin Pricing Scheme.").

39.  As explained above, for those Montana citizens receiving insulin through TRICARE—either from retail pharmacies or through the TMOP—the out-of-pocket costs those citizens must pay, and that Express Scripts ensure is collected, are dictated by federal law and Express Scripts' contract with the DoD.

40. Thus when it concerns Express Scripts' obligations to cause the collection of co-payments through TRICARE, a causal nexus exists between Express Scripts' actions at the direction of a federal officer from the DoD and Montana's claims.

### C.  Express Scripts Has Colorable Federal Defenses.

41. For federal-officer removal purposes, a defense only needs to be colorable. *Jefferson Cnty.*, 527 U.S. at 431. "Colorable" is a low bar; a defense is colorable if it is plausible—a defendant "need not win his case before he can have it removed." the statute "does not require a court to hold that a defense will be successful before removal is appropriate." *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014) (quoting *Willingham*, 395 U.S. at 407).

42. Here, Express Scripts can raise a colorable government-contractor immunity defense and a colorable preemption-based defense.

43. The federal government contractor defense originally developed in the context of government contractors facing claims based on equipment manufactured by the contractor to government direction. Under a traditional tort liability formulation, the defense applies when (1) the United States approved reasonably precise specifications; (2) the contractor's work product (equipment) conformed to those specifications; and (3) the supplier warned the United States about the risks or exposures in the use of the equipment known to the supplier but not to the United

States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Notwithstanding the origins of the defense, "it is at least plausible that the government contractor defense could apply outside the military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see also Jacks*, 701 F.3d at 1235 ("Neither does our lack of precedent regarding the availability of the *Boyle* defense to non-military service contractors defeat the plausibility of the defense.") (citing *Bennett*, 607 F.3d at 1089). Regardless of the context, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington Cnty.*, 996 F.3d at 255.

44. Montana alleges that the Montana Unfair Trade Practices and Consumer Protection Act and state common law theories compel Express Scripts to charge prices and assess co-pays to Montana residents—necessarily including TRICARE beneficiaries—lower than it actually charged them pursuant to the directives of federal law and the terms of the DoD contract.

45. Based on Montana's allegations, Express Scripts cannot simultaneously comply with its obligations under the TRICARE Contract and contrary Montana law, which makes a federal contractor immunity defense colorable.

46. Montana seeks to collect as restitution for the alleged violations of Montana law the money that Montana consumers allegedly overpaid as a result of the supposed violations. Compl. at 123, § C. Those alleged overpayments include,

"deductibles, coinsurance requirements, or *copayment* requirements." Compl. ¶ 272 (emphasis added). For those citizens who are TRICARE beneficiaries, Express Scripts had no choice but to cause the charging of the specific co-payments required by the TRICARE Contract. *See* Ex. B at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure"); *id.* at § C.8.2. ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"); *see also* 10 U.S.C. § 1074g(a)(6)(A).

47. Montana also seeks an injunction that could require Express Scripts to stop charging the co-payments required under the TRICARE Contract. Specifically, Montana seeks an injunction against Defendants "prohibiting Defendants' conduct in violation of the MUTPCPA" "prevent[ing] future unfair and deceptive trade practices under the MUTPCPA." Compl. ¶¶ 502, 505. Montana contends that collecting allegedly inflated payments from Montana citizens, including those relying on the TMOP, are violations of the MUTPCPA. *See, e.g.,* Compl. ¶ 500 ("[e]ach at-issue purchase the State and Montana diabetics made for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of the MUTPCPA"). Montana therefore seeks an injunction that, if granted, would purport to prohibit Express Scripts from collecting the co-

payments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Montana law and Express Scripts' obligations under the TRICARE Contract.

48. In addition to government-contractor immunity, Express Scripts can raise the defense of preemption based on the federal TRICARE statute, which provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g. The statute and accompanying federal regulations contain express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7).

49. The same conflict between Montana law and Express Scripts' obligations under the TRICARE Contract described above provides Express Scripts a colorable government contractor defense also permits Express Scripts to raise a preemption defense.

## SUPPLEMENTAL JURISDICTION

50. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.

### A. The Notice of Removal Is Timely.

51. This Notice of Removal is timely because it is filed within 30 days of service of the complaint on the removing Defendants. 28 U.S.C. § 1446(b)(1). Removing Defendants were served on October 20, 2022.

### B. Consent is not Required.

52. The federal-officer-removal statute does not require other Defendants to consent to removal. *Durham*, 445 F.3d at 1253 ("Whereas all defendants must consent to removal under section 1441, … a federal officer or agency defendant can unilaterally remove a case under section 1442") (internal citation omitted).

### C. Written Notice Of Removal.

53. In accordance with 28 U.S.C. § 1446(d), Express Scripts will give written notice of the filing of this Notice of Removal to all adverse parties of record in this matter and will file a copy of this Notice with the clerk of the state court. *See also* L.R. 3.3(a)(1).

54.     Pursuant to 28 U.S.C. § 1446(a), Express Scripts includes a copy of all process, pleadings, and orders served on it with Exhibit A.

## **CONCLUSION**

WHEREFORE, Express Scripts removes this Action to this Court for further proceedings according to law.

Dated this 14th day of November 2022.

                                                  Respectfully submitted,

                                                  */s/  Chad E. Adams*
                                                  Chad E. Adams
                                                  Browning, Kaleczyc, Berry & Hoven, P.C.
                                                  800 N. Last Chance Gulch,
                                                  Helena, Montana 59624
                                                  Telephone: (406) 443-6820
                                                  Facsimile: (406) 443-6882
                                                  chad@bkbh.com

                                                  Attorneys for Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of November, 2022, a true copy of the foregoing was served:

Via ECF to the following parties:

>Jennifer M. Studebaker
>Forman Watkins & Krutz LLP
>201 East Capitol Street, Suite 2200
>Jackson, Mississippi 39201
>
>Derek J. Oestreicher
>Chief Deputy Attorney General
>Justice Building
>215 North Sanders
>P.O. Box 201401
>Helena, Montana 59620
>
>W. Lawrence Deas
>Liston & Deas, PLLC
>605 Crescent Boulevard
>Ridgeland, Mississippi 39157

*/s/ Chad E. Adams*