Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
Billings, MT 59101
Phone: (406) 252-5500
cmatovich@mkhattorneys.com
khuso@mkhattorneys.com


*Attorneys for UnitedHealth Group Incorporated and OptumInsight, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| THE STATE OF MONTANA, ex rel., AUSTIN KNUDSEN, ATTORNEY GENERAL,<br><br>        Plaintiff,<br><br>  vs.<br><br>ELI LILLY AND COMPANY, et al.,<br><br>        Defendants. | CV-22-00087-BMM<br><br><br>**UNITEDHEALTH GROUP INCORPORATED AND OPTUMINSIGHT, INC.'S BRIEF IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STANDARD OF REVIEW ....................................................................................3

ARGUMENT .........................................................................................................6

I.      UNDER MONTANA'S LONG-ARM STATUTE AND THE
FEDERAL CONSTITUTION, THE COURT LACKS GENERAL
PERSONAL JURISDICTION OVER UHG AND OPTUMINSIGHT
BECAUSE NEITHER IS "AT HOME" IN MONTANA...............................6

II.     THE COURT LACKS SPECIFIC PERSONAL JURISDICTION
OVER UHG AND OPTUMINSIGHT UNDER MONTANA'S
LONG-ARM STATUTE BECAUSE THE STATE FAILS TO
ALLEGE THAT THIS SUIT ARISES FROM OPTUMINSIGHT OR
UHG ENGAGING IN ANY OF THE ENUMERATED ACTIVITIES.........8

III.    THE COURT LACKS SPECIFIC PERSONAL JURISDICTION
OVER UHG AND OPTUMINSIGHT AS A MATTER OF
FEDERAL DUE PROCESS......................................................................12

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Arkansas ex rel. Rutledge v. Eli Lilly et al.*,
  No. 22-cv-549 (E.D. Ark. July 8, 2022) ............................................................17

*Bi-Lo Foods v. Alpine Bank*,
  1998 MT 40, 287 Mont. 367, 955 P.2d 154 ......................................................11

*Brown v. Serv. Grp. of Am.*,
  2022 U.S. Dist. LEXIS 2296 (D. Or. Jan. 5, 2022) ........................................5, 22

*Cimmaron Corp. v. Smith*,
  2003 MT 73, 315 Mont. 1, 67 P.3d 258 ........................................................10, 11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................................3, 6, 7

*DeLeon v. BNSF Ry. Co.*,
  2018 MT 219, 392 Mont. 446, 426 P.3d 1 ...............................................7, 8, 20

*First Nat'l Bank v. Estate of Carlson*,
  448 F. Supp. 3d 1091 (D. Mont. 2020) .........................................................13, 20

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
  141 S. Ct. 1017 (2021) ..................................................................................5, 13

*Hightower v. Knight*,
  2005 Mont. Dist. LEXIS 1523 (D. Mont. Nov. 10, 2005) ...............................4, 8

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ....................................................................*passim*

*J.K.J. v. City of San Diego*,
  42 F.4th 990 (9th Cir. 2022) ...........................................................................17

*King v. Am. Family Mut. Ins. Co.*,
  632 F.3d 570 (9th Cir. 2011) .......................................................................8, 20

*Kinnee v. TEI Biosciences Inc.*,
  2022 U.S. Dist. LEXIS 193688 (S.D. Cal. Oct. 24, 2022) ......................5, 22, 23

*Milky Whey, Inc. v. Dairy Partners, LLC*,
    2015 MT 18, 378 Mont. 75, 342 P.3d 13 ....................................................10, 12

*Mississippi v. Eli Lilly & Co.*,
    No. 21-cv-674 (S.D. Miss. Aug. 15, 2022) ....................................................3, 17

*Nomad Glob. Commc'n Sols., Inc.*,
    2021 U.S. Dist. LEXIS 72312 (D. Mont. Apr. 14, 2021)............................3, 5, 6

*Park Plaza Condo. Ass'n v. Travelers Indem. Co. of Am.*,
    2018 U.S. Dist. LEXIS 45613 (D. Mont. Mar. 20, 2018) ..........................*passim*

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .............................................................14, 16, 18

*Tackett v. Duncan*,
    2014 MT 253, 376 Mont. 348, 334 P.3d 920 ..............................................*passim*

*Threlkeld v. Colorado*,
    2000 MT 369, 303 Mont. 432, 16 P.3d 359 .............................................2, 7, 11

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...........................................................................................16

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................................*passim*

*Watkins & Shepard Trucking, Inc. v. Jofran Sales, Inc.*,
    2017 Mont. Dist. LEXIS 20 (Mont. Dist. Ct. Aug. 10, 2017).....................10, 12

*Zuercher v. Hoskins*,
    2021 U.S. Dist. LEXIS 251305 (N.D. Cal. Dec. 16, 2021)...............................23

**INTRODUCTION**

As explained in the PBM Defendants' forthcoming brief supporting their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the State's claims against UnitedHealth Group Incorporated (UHG), OptumRx, Inc., and OptumInsight, Inc. fail because there are no plausible or particularized factual allegations supporting the claims against them. But the Complaint against two of those entities—UHG and OptumInsight—also fails because the State's allegations fail to establish that the Court has personal jurisdiction over them. The State's allegations against UHG and OptumInsight fail under both the Montana long-arm statute and as a matter of federal due process.

**UHG.** The State has sued UHG only in its capacity as OptumRx's parent company. But allegations of a parent–subsidiary relationship are insufficient to establish jurisdiction over the parent—whether under Montana's long-arm statute or as a matter of due process under the Fourteenth Amendment to the U.S. Constitution. *See, e.g., Park Plaza Condo. Ass'n v. Travelers Indem. Co. of Am.,* No. CV 17-112-GF-JTJ, 2018 U.S. Dist. LEXIS 45613, at *13–14 (D. Mont. Mar. 20, 2018).

**OptumInsight.** As for OptumInsight, the State alleges only that it "analyzed data and other information from the PBM and Manufacturer Defendants to advise Defendants with regard to the profitability of the Insulin Pricing Scheme." ECF

1

No. 40, Am. Compl. ¶ 193. Those allegations—which lack any factual detail about OptumInsight's supposed data analysis—are insufficient to confer personal jurisdiction in Montana over OptumInsight. They fail under Montana's long-arm statute because they do not show that (1) the State's claims arise from OptumInsight's transaction of *business in Montana*, (2) the State's claims arise from an OptumInsight *contract relating to Montana*, or (3) OptumInsight's acts resulted in the *accrual of torts in Montana*.[1] *See* M.R. Civ. P. 4(b)(1); *Threlkeld v. Colorado*, 2000 MT 369, 303 Mont. 432, 438, 16 P.3d 359, 363. And they fail as a matter of due process because they do not establish suit-related contacts that create a substantial connection to Montana. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The State tries to conceal its lack of specific allegations about UHG and OptumInsight by shoehorning them into the definition of "OptumRx." *See* Am. Compl. ¶ 204 ("Collectively, Defendants UnitedHealth Group, Inc., OptumRx, Inc., and OptumInsight, Inc., including all predecessor and successor entities, are referred to as 'OptumRx.'"). But the law requires a plaintiff to allege facts showing that *each* defendant has the required suit-related contacts with the forum. Group pleading is not enough. For instance, the State alleges that it is suing "OptumRx" "in its capacities as a PBM and mail-order pharmacy." *Id.* at ¶ 203. But the State

---

[1] Nor do the allegations satisfy any other subsection of M.R. Civ. P. 4(b), each of which is more obviously inapplicable.

offers no allegations that UHG or OptumInsight provides those services—in Montana or anywhere else.

Another federal court recently held that a nearly identical complaint by the State of Mississippi failed to establish jurisdiction over UHG and OptumInsight under the Mississippi long-arm statute and as a matter of federal due process.[2] *See* Order, *Mississippi v. Eli Lilly & Co.,* No. 21-cv-674 (S.D. Miss. Aug. 15, 2022), ECF No. 112. This Court should reach the same result.

## STANDARD OF REVIEW

This Court may exercise personal jurisdiction only if doing so complies with Montana's long-arm statute (M.R. Civ. P. 4(b)(1)) and federal due process under the Fourteenth Amendment to the U.S. Constitution. Both Montana's long-arm statute and federal due process recognize two types of personal jurisdiction: general and specific.

With general jurisdiction, the test under Montana's long-arm statute and federal due process is the same (*Nomad Glob. Commc'n Sols., Inc.*, No. CV 20-138-M-DLC, 2021 U.S. Dist. LEXIS 72312, at *7 (D. Mont. Apr. 14, 2021)) and is satisfied only if a business's contacts are so pervasive that it can be "fairly regarded as at home" in the State. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *accord Tackett v. Duncan*, 2014 MT 253, ¶ 20, 376 Mont. 348, 353, 334

---

[2] The Mississippi court also dismissed Optum, Inc. and ORx Holdings, LLC—two of OptumRx's other parent companies.

P.3d 920, 925 (general jurisdiction is proper under the long-arm statute when "the party is physically present in the state or . . . the party's contacts with the state are so pervasive that the party may be deemed to be physically present within the state").

To satisfy Montana's long-arm statute for specific jurisdiction, the State must show that UHG and OptumInsight engaged in one of the following: (i) "the transaction of any business within Montana"; (ii) "the commission of any act resulting in accrual within Montana of a tort action"; or (iii) "entering into a contract for services to be rendered or for materials to be furnished in Montana by such person." M.R. Civ. P. 4(b)(1)(A), (B), and (E); *see also Tackett*, 2014 MT 253, ¶ 21, 376 Mont. at 354, 334 P.3d at 925.

"If the non-resident defendant did not engage in any of the activities enumerated in the long-arm statute, the analysis ends[,] and jurisdiction cannot be invoked." *Hightower v. Knight*, No. DV-05-107, 2005 Mont. Dist. LEXIS 1523, at *11 (D. Mont. Nov. 10, 2005). "[I]f personal jurisdiction exists pursuant to Rule 4(b)(1), [the court] then determine[s] whether exercising such jurisdiction would comport with traditional notions of fair play and substantial justice embodied in the Due Process Clause." *Tackett*, 2014 MT 253, ¶ 22, 376 Mont. at 354, 334 P.3d at 926.

Under the Fourteenth Amendment's Due Process Clause, specific jurisdiction exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("[S]pecific jurisdiction is tethered to a relationship between the forum and the claim.").

The State bears the burden of establishing that the Court has personal jurisdiction over each defendant under the long-arm statute and the federal Constitution. *Nomad Glob. Commc'n Sols., Inc.*, 2021 U.S. Dist. LEXIS 72312, at *4 (noting that the plaintiff "bears the burden of proving this Court has personal jurisdiction"). "A plaintiff must establish jurisdiction over each defendant individually." *Kinnee v. TEI Biosciences Inc.*, No. 22-CV-604, 2022 U.S. Dist. LEXIS 193688, at *5 (S.D. Cal. Oct. 24, 2022) (quotation omitted). Accordingly, "each defendant's contacts with the forum must be assessed individually." *Brown v. Serv. Grp. of Am.*, No. 3:20-cv-02205-IM, 2022 U.S. Dist. LEXIS 2296, at *9 (D. Or. Jan. 5, 2022), *aff'd*, 2022 U.S. App. LEXIS 31611 (9th Cir. Nov. 16, 2022).

# ARGUMENT

This Court lacks general jurisdiction over UHG and OptumInsight under Montana's long-arm statute and the Due Process Clause because the State has not alleged that either entity is at home in Montana.

This Court also lacks specific jurisdiction under the long-arm statute and as a matter of federal due process. There is no specific jurisdiction under the long-arm statute because the State fails to allege that this suit arises from UHG or OptumInsight engaging in any of the activities enumerated in the statute. And there is no specific jurisdiction as a matter of due process because the State fails to allege that either company has suit-related contacts creating a substantial connection with Montana.

## I. UNDER MONTANA'S LONG-ARM STATUTE AND THE FEDERAL CONSTITUTION, THE COURT LACKS GENERAL PERSONAL JURISDICTION OVER UHG AND OPTUMINSIGHT BECAUSE NEITHER IS "AT HOME" IN MONTANA.

When it comes to general personal jurisdiction, "the jurisdictional analyses under [Montana's long-arm statute] and federal due process are the same." *Nomad Glob. Commc'n Sols., Inc.*, 2021 U.S. Dist. LEXIS 72312, at *7 (quotation omitted). General jurisdiction attaches only if a business "is fairly regarded as at home" in a state. *Daimler*, 571 U.S. at 137; *accord Tackett*, 2014 MT 253, ¶ 20, 376 Mont. at 353, 334 P.3d at 925 (general jurisdiction is proper under the long-arm statute when "the party is physically present in the state or . . . the party's

contacts with the state are so pervasive that the party may be deemed to be physically present within the state"). In most cases, a company's "place of incorporation and principal place of business" are the only states that satisfy that requirement. *Daimler*, 571 U.S. at 137; *accord DeLeon v. BNSF Ry. Co.*, 2018 MT 219, ¶ 8, 392 Mont. 446, 449, 426 P.3d 1, 4.

The State alleges that UHG and OptumInsight are organized under Delaware law with their principal places of business in Minnesota. Am. Compl. ¶¶ 180, 189. By the State's own allegations, those companies are at home in Delaware and Minnesota—not Montana.

The Amended Complaint contains no factual allegations that would render this an "exceptional case" when "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. There are no factual allegations showing that either company has "affiliations with [Montana that] are so 'continuous and systematic' as to render them essentially at home" there. *Id.* at 127 (citation omitted). The State offers no allegation that either company's "activities . . . create a physical presence within Montana" or that those activities are "substantial, continuous, and systematic as opposed to isolated, casual, or incidental." *Threlkeld*, 2000 MT 369, 303 Mont. at 436, 16 P.3d at 362.

Inasmuch as the State argues that OptumInsight consented to general jurisdiction in Montana by registering to do business in the State, the argument is meritless. The Montana Supreme Court has held that "[r]eading our registration statutes to confer general personal jurisdiction over foreign corporations would swallow the Supreme Court's due process limitations on the exercise of general personal jurisdiction, and we accordingly refuse to do so." *DeLeon*, 2018 MT 219, ¶ 23, 392 Mont. at 455–56, 426 P.3d at 9; *see also King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 577 (9th Cir. 2011) ("Montana's statutory scheme governing the appointment of an agent for the service of process was not meant to initiate a jurisdictional free-for-all by expanding personal jurisdiction to companies that have not transacted any business in Montana.").

## II. THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER UHG AND OPTUMINSIGHT UNDER MONTANA'S LONG-ARM STATUTE BECAUSE THE STATE FAILS TO ALLEGE THAT THIS SUIT ARISES FROM OPTUMINSIGHT OR UHG ENGAGING IN ANY OF THE ENUMERATED ACTIVITIES.

The Court also lacks specific personal jurisdiction over UHG and OptumInsight under Montana's long-arm statute. The State does not allege facts showing that this suit arises from either company engaging in any of the activities enumerated in the statute. Accordingly, "the analysis ends[,] and jurisdiction cannot be invoked." *Hightower*, 2005 Mont. Dist. LEXIS 1523, at *11.

The State does not allege (1) that its claims arise from UHG's or OptumInsight's transacting business in Montana; (2) that its claims arise from a UHG or OptumInsight contract relating to Montana; or (3) that UHG's or OptumInsight's acts resulted in the accrual of torts in Montana on which this case is based.[3] *See id.* at 13–19; M.R. Civ. P. 4(b)(1).

As for UHG, there are no factual allegations that it "transacted business" within Montana. The State alleges that executives from UHG met with executives from the Manufacturer Defendants "to discuss their coordinated efforts in furtherance of the Insulin Pricing Scheme." Am. Compl. ¶ 186. But the State does not allege that any meeting took place in Montana. *See id.* Even if the State had alleged a meeting in Montana, "interstate communication is an almost inevitable accompaniment to doing business in the modern world[] and cannot by itself be considered a 'contact' for justifying the exercise of personal jurisdiction." *Tackett*, 2014 MT 253, ¶ 30, 376 Mont. at 357, 334 P.3d at 928 (internal quotations omitted). Nor can UHG's alleged involvement in OptumRx activities amount to "transacting business" in Montana. *Holland Am. Line, Inc.*, 485 F.3d at 459 ("It is

---

[3] The other enumerated activities under Rule 4(b)(1) are as follows: "(C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana"; "(D) contracting to insure any person, property, or risk located within Montana at the time of contracting"; "(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana"; or "(G) acting as personal representative of any estate within Montana." There are no allegations in the Amended Complaint that UHG or OptumInsight engaged in any activities that could even arguably satisfy one of those provisions.

well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to the other[.]"). To impute OptumRx's activities to UHG for personal jurisdiction purposes, the State would have to allege that UHG's "control over [OptumRx's] activities is so complete that the subsidiary is, in fact, merely a division or department of the parent." *Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1 (cleaned up). There is no such allegation here.

The State also fails to allege that its claims arise from a UHG contract relating to Montana. The Amended Complaint alleges that OptumRx, not UHG, contracted with manufacturers for rebates. *See* Am. Compl. ¶ 187. And there is no allegation that UHG engaged in any Montana-linked communications related to those alleged contracts. *Id.* At any rate, "personal jurisdiction is not acquired through interstate communications made pursuant to a contract *that is to be performed in another state*." *Cimmaron Corp. v. Smith*, 2003 MT 73, ¶ 14, 315 Mont. 1, 5, 67 P.3d 258, 261 (emphasis in original); *see also Watkins & Shepard Trucking, Inc. v. Jofran Sales, Inc.*, No. CDV-2016-46, 2017 Mont. Dist. LEXIS 20, at *12 (Mont. Dist. Ct. Aug. 10, 2017) (no personal jurisdiction under the Montana long-arm statute when "the claim arises out of transactions, or performance of services pursuant to a contract, that took place outside of Montana"); *Milky Whey, Inc. v. Dairy Partners, LLC*, 2015 MT 18, ¶ 27, 378

Mont. 75, 83, 342 P.3d 13, 19 ("Even extensive interstate communications, however, do not give rise to jurisdiction where the contract is to be performed in another state.").

Finally, the State does not allege tort claims against UHG that accrued in Montana and gave rise to this action. In analyzing the accrual of torts, Montana courts "focus[] on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries." *Tackett*, 2014 MT 253, ¶ 31, 376 Mont. at 358, 334 P.3d at 928. The State alleges in threadbare fashion that "UnitedHealth Group's conduct had a direct effect in Montana and damaged diabetics and payors in Montana and the State." Am. Compl. ¶ 188. But it is not enough to allege that harm resulted in the State when "the actions which gave rise to the alleged torts occurred outside of Montana." *Cimmaron Corp.*, 2003 MT 73, ¶ 20, 315 Mont. at 6, 67 P.3d at 26; *see also Threlkeld*, 2000 MT 369, 303 Mont. at 442, 16 P.3d at 365 (insufficient to allege tortious activity that occurred outside Montana caused harm in Montana); *Bi-Lo Foods v. Alpine Bank*, 1998 MT 40, ¶ 21, 287 Mont. 367, 373, 955 P.2d 154, 157 (same).

Nor has the State alleged facts satisfying the long-arm statute as to OptumInsight. The State alleges OptumInsight "analyzed data and other information from the PBM and Manufacturer Defendants to advise Defendants

with regard to the profitability of the Insulin Pricing Scheme." Am. Compl. ¶ 193. First, there is no allegation that this constitutes the transaction of business *in Montana*. Second, the State does not allege an OptumInsight contract gave rise to its claims, never mind that any OptumInsight contract has the required connection to Montana. *See Milky Whey, Inc.*, 2015 MT 18, ¶ 27, 378 Mont. at 83, 342 P.3d at 19 (contract to be performed in another state does not give rise to jurisdiction under the long-arm statute); *Watkins & Shepard Trucking, Inc.*, 2017 Mont. Dist. LEXIS 20 at *12 (same). Finally, any tort accrual argument would fail against OptumInsight because the State does not allege that OptumInsight engaged in tortious conduct *in Montana*. *See, e.g., Tackett*, 2014 MT 253, ¶ 35, 376 Mont. at 359–60, 334 P.3d at 929 ("[T]he mere fact that the plaintiff was detrimentally affected within Montana by the defendant's actions outside Montana is not sufficient to establish accrual of a tort action within this state."). At most, the State alleges OptumInsight engaged in conduct elsewhere that supposedly caused harm in Montana, which is not enough. *Id.* Accordingly, the Court lacks specific jurisdiction over UHG and OptumInsight under Montana's long-arm statute.

## III. THE COURT LACKS SPECIFIC PERSONAL JURISDICTION OVER UHG AND OPTUMINSIGHT AS A MATTER OF FEDERAL DUE PROCESS.

The Court also lacks specific personal jurisdiction over UHG and OptumInsight as a matter of due process. Specific personal jurisdiction exists only

when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Ford Motor Co.*, 141 S. Ct. at 1026; *Holland Am. Line, Inc.*, 485 F.3d at 460 ("[S]pecific jurisdiction is tethered to a relationship between the forum and the claim."). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (*or third parties*) and the forum State." *Walden*, 571 U.S. at 284. Courts in the Ninth Circuit[4] use a three-part test to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *9.

The State mentions UHG and OptumInsight in only a handful of allegations, most of which relate solely to their status as OptumRx's corporate parent and affiliate. "To the extent that [the State] seeks to impute the activities of [OptumRx]

---

[4] The Montana Supreme Court has also adopted this approach. *First Nat'l Bank v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1098 n.2 (D. Mont. 2020).

to [UHG or OptumInsight], this argument has little traction." *Holland Am. Line, Inc.,* 485 F.3d at 459. A parent–subsidiary affiliation is never enough to support specific personal jurisdiction. *See Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *11. And even a parent or affiliate's direct involvement in the affairs of its subsidiary does not subject it to imputed jurisdictional contacts. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego."). The State cannot evade the fact that these entities are separate from OptumRx unless it alleges that OptumRx is subject to their complete control. *See Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1. It has not even attempted to do so.

An allegation-by-allegation review of every paragraph in the Amended Complaint that refers to UHG or OptumInsight confirms that there are no factual allegations describing contacts with Montana that give rise or relate to the State's claims, much less that describe suit-related contacts creating a substantial connection with the State.

**Paragraphs 180 and 181** contain information about UHG's places of business and incorporation, alleging only that it is an out-of-state company.

**Paragraphs 182 and 183** contain general information about UHG's business, revenues, and Fortune 500 ranking. Am. Compl. ¶¶ 182–83. Those allegations do not speak to specific jurisdiction. In paragraph 183, the State alleges that "[m]ore than one-third of the overall revenues of UnitedHealth Group come from OptumRx and OptumInsight." *Id.* ¶ 183. That allegation about revenue does not identify any suit-related conduct, much less that any such conduct created a "substantial connection" between Montana and UHG. *Walden*, 571 U.S. at 284.

**Paragraph 184** contains only conclusory allegations about UHG's corporate structure and statements that UHG is "directly involved in the company policies that inform its PBM services and formulary construction, including with respect to the at-issue Insulin Pricing Scheme." Am. Compl. ¶ 184. The State fails to explain how UHG was "directly involved," and the allegation that UHG supposedly sets company-wide "overarching, enterprise-wide policies" (*id.* at 184) is a conclusion that has no discernable connection to Montana. *See Holland Am. Line, Inc.*, 485 F.3d at 460.

Insofar as the State is trying to use the allegations in Paragraph 184 to pierce the corporate distinction between UHG and OptumRx, the allegations are insufficient. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its

subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks and citation omitted). The State has not alleged facts coming close to suggesting that OptumRx and UHG are alter egos or justifying treating them as one and the same corporate entity. *See Ranza*, 793 F.3d at 1074 ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego."); *Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1 (in assessing jurisdiction, court cannot erase the corporate distinction between a parent and subsidiary unless "the parent's control over the subsidiar[y's] activities is so complete that the subsidiary is, in fact, merely a division or department of the parent").

**Paragraph 185** contains an allegation that "[*UnitedHealth Group*] then negotiate[s] with pharmacies to lower costs at the point of sale . . . [*UnitedHealth Group*] also operate[s] [mail order pharmacies] . . . [*UnitedHealth Group*] work[s] directly with drug wholesalers and distributors to ensure consistency of the brand and generic drug supply, and a reliance on that drug supply." Am. Compl. ¶ 185 (brackets in complaint). The State purports to quote UHG's 2020 sustainability report, but it took liberties with the report's text by replacing the word "we" with "UnitedHealth Group." Here is what the quoted excerpt actually says:

> OptumRx works directly with pharmaceutical manufacturers to secure discounts that lower the overall cost of medications and create tailored

formularies – or drug lists – to ensure people get the right medications. We then negotiate with pharmacies to lower costs at the point of sale. We also operate prescription home delivery . . . . We work directly with drug wholesalers and distributors to ensure consistency of the brand and generic drug supply, and a reliance on that drug supply.

*UnitedHealth Group 2020 Sustainability Report* (2021), https://unitedhealthgroup.com/content/dam/UHG/PDF/sustainability/final/2020_SustainabilityReport.pdf.[5] In context, the excerpt confirms that the word "We"—which the State replaced with "UnitedHealth Group" in brackets—refers to OptumRx, not UHG. Regardless, the State cannot erase the corporate form by pointing to the word "We" in a regulatory filing. *See Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1. The State has not even tried to allege facts that would justify disregarding the corporate form.[6]

**Paragraph 186** contains an allegation that UHG and OptumRx executives met with Eli Lilly, Novo Nordisk, and Sanofi seven times over eight years. Am.

---

[5] At the motion-to-dismiss stage, this Court may consider documents incorporated into the complaint by reference. *J.K.J. v. City of San Diego*, 42 F.4th 990, 997 (9th Cir. 2022).

[6] The State's mischaracterization of the sustainability report would be bad enough in a vacuum, but in this case, the State copied the doctored allegation from complaints filed by the State of Mississippi and the State of Arkansas. And it did so after UHG pointed out the allegation's falsity in moving to dismiss both Mississippi's and Arkansas's complaints. *See* Third Am. Compl., *Mississippi ex rel. Fitch v. Eli Lilly et al.*, No. 21-cv-00674 (S.D. Miss. Feb. 17, 2022), ECF No. 71 at ¶ 195 *and* Mem. Supporting Mot. to Dismiss for Lack of Personal Jurisdiction (S.D. Miss. Mar. 21, 2022), ECF No. 88 at pp. 11–12 (pointing out the allegation's falsity); *see also* First Am. Compl., *Arkansas ex rel. Rutledge v. Eli Lilly et al.*, No. 22-cv-549 (E.D. Ark. July 8, 2022), ECF No. 57 at ¶ 186 *and* Mem. Supporting Mot. to Dismiss for Lack of Personal Jurisdiction (E.D. Ark. Sept. 22, 2022), ECF No. 88 at pp. 8–9 (pointing out the allegation's falsity). And the Mississippi court considered the same false allegation in granting the motion to dismiss for lack of personal jurisdiction.

Compl. ¶ 186. But the State does not allege that any meeting took place in Montana, and Paragraph 186 otherwise contains no factual allegations about any suit-related contacts between Montana and UHG. *Walden*, 571 U.S. at 284 ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum State.") (citation and quotation marks omitted). Nor does the State attempt to explain what happened at that purported meeting that facilitated the alleged "scheme."

**Paragraph 187** alleges that UHG invested in building out its subsidiary OptumRx's capabilities. Am. Compl. ¶ 187. This is exactly the type of direct involvement in "financing and macro-management" that the Ninth Circuit has held insufficient to support personal jurisdiction under an alter-ego theory. *Ranza*, 793 F.3d at 1074.

**Paragraph 188** is a conclusory and threadbare allegation that "UnitedHealth Group's conduct had a direct effect in Montana and damaged diabetics and payors in Montana and the State." Am. Compl. ¶ 188. That allegation is nothing more than another attempt to create jurisdiction over UHG based on its status as one of OptumRx's parent companies, and it does not establish that UHG engaged in suit-related conduct creating a substantial connection with Montana. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

**Paragraph 201** includes an allegation about UHG's status as a corporate parent and purports to describe "numerous interlocking directorships and shared executives" between parent and subsidiary. Am. Compl. ¶ 201. But, again, UHG's status as OptumRx's parent company is not sufficient to subject it to specific personal jurisdiction in Montana unless the State can allege that it exercised complete control over OptumRx. *Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1. It cannot, and nothing in the Amended Complaint would justify disregarding the corporate distinction.

**Paragraph 202** alleges that UnitedHealth Group's executives and officers are "directly involved in the policies and business decisions of OptumRx, Inc. and OptumInsight that gave rise to the State's claims in this Complaint." Am. Compl. ¶ 202. This is no more than a threadbare conclusion. Setting that aside, it is just another attempt to impute OptumRx's contacts to UHG. But unless the State alleges that UHG exercises total control over OptumRx, that imputation would be contrary to Montana and Ninth Circuit law. *Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1. Outside of corporate parenthood, this allegation does not connect the alleged "direct involvement" to Montana. *Walden*, 571 U.S. at 290.

**Paragraphs 189–191** allege OptumInsight's place of incorporation and principal place of business and then allege that OptumInsight is registered to do business in Montana and holds an active license with the Department of Insurance in the state. Am. Compl. ¶¶ 189–91. Those allegations are not sufficient to establish general jurisdiction over OptumInsight. *DeLeon*, 2018 MT 219, ¶ 23, 392 Mont. at 455–56, 426 P.3d at 9 ("Reading our registration statutes to confer general personal jurisdiction over foreign corporations would swallow the Supreme Court's due process limitations on the exercise of general personal jurisdiction, and we accordingly refuse to do so."); *see also King*, 632 F.3d at 577; *First Nat'l Bank v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1107 (D. Mont. 2020). Nor can they establish specific jurisdiction because the State offers no factual allegations connecting OptumInsight's alleged registration or license to the State's underlying claims. *See Holland Am. Line, Inc.*, 485 F.3d at 460.

**Paragraph 192** alleges only OptumInsight's predecessor entities—an allegation that does not speak to specific jurisdiction.

**Paragraphs 193–196** allege that OptumInsight collaborated with the Manufacturer Defendants in furtherance of the alleged scheme by "analyz[ing] data and other information," "advis[ing] Defendants with regard to the profitability of the Insulin Pricing Scheme," collaborating with key executives from the Manufacturer Defendants, and "partner[ing] with OptumRx to offer the at-issue

pharmacy benefit and data and cost analysis services that gave rise to the Insulin Pricing Scheme to Montana diabetics and payors." Am. Compl. at ¶¶ 193–94, 196. There are no factual allegations showing that OptumInsight's supposed analysis or consulting work occurred in Montana, and the State does not explain how that analysis or consulting relates to its underlying claims or created a substantial connection with Montana. Paragraph 195 alleges that the "Manufacturers utilized their relationships with OptumInsight to deepen their ties to the overall UnitedHealth Group corporate family. . ." *Id.* at ¶ 195. In addition to being untethered from Montana, that allegation concerns the manufacturers' conduct, not OptumInsight's. At bottom, those allegations fail to establish jurisdiction because the State never alleges what OptumInsight allegedly did wrong in Montana. The State's threadbare allegations about OptumInsight do not establish a substantial suit-related connection between OptumInsight and Montana, and the State may not otherwise establish specific jurisdiction over OptumInsight by virtue of its affiliation with OptumRx.

**Paragraph 204** represents the State's attempt to manufacture specific jurisdiction over UHG and OptumInsight by lumping the companies together as "OptumRx." *See* Am. Compl. ¶ 204 ("Collectively, Defendants UnitedHealth Group, OptumRx, Inc., and OptumInsight, Inc., including all predecessor and successor entities are referred to as 'OptumRx.'"). But the law requires a plaintiff

to allege facts showing that *each* defendant has the required suit-related contacts with Montana. *Kinnee*, 2022 U.S. Dist. LEXIS 193688, at *5; *Brown*, 2022 U.S. Dist. LEXIS 2296, at *9. The Court could exercise personal jurisdiction based on those allegations only if the State had alleged facts showing that the Court could pierce the corporate veil under an alter ego theory, which, for the reasons stated above, it cannot. *See e.g., Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *13 n.1. The State's improper attempt to define all three entities as "OptumRx" also fails because the State alleges that it is suing "OptumRx" "in its capacities as a PBM and mail-order pharmacy." Am. Compl. ¶ 203. But beyond alleging that UHG and OptumInsight are affiliated with OptumRx, the State does not allege that either of those companies provide PBM or mail-order pharmacy services—in Montana or anywhere else.

The Amended Complaint fails to establish specific jurisdiction over UHG or OptumInsight because every allegation discussed above is either untethered from Montana or untethered from the claims in this case. First, there is no allegation that UHG or OptumInsight purposefully directed any activities toward Montana, consummated any transactions in Montana, or purposefully availed themselves of the privilege of conducting activities in the forum. *See e.g., Park Plaza Condo. Ass'n*, 2018 U.S. Dist. LEXIS 45613, at *9. For nearly every allegation discussed above, the State fails to allege any connection to Montana, much less that either

UHG or OptumInsight "purposefully direct[ed] [its] activities at the forum state or purposefully avail[ed] [it]self of the benefits and protections of the laws of the forum state." *Zuercher v. Hoskins*, No. 21-cv-05142-YGR, 2021 U.S. Dist. LEXIS 251305, at *7 (N.D. Cal. Dec. 16, 2021).

Second, in the very few instances when the State attempts to allege forum-related conduct, it fails to allege how that conduct gives rise or relates to the suit. *See* Am. Compl. ¶¶ 189–91 (OptumInsight's alleged registration to do business in Montana). To satisfy the second element of the test, the State must establish that the claims "arise[] out of or relate[] to the defendant[s'] forum-related activities." *Zuercher*, 2021 U.S. Dist. LEXIS 251305, at *7. That is, the State must allege UHG or OptumInsight engaged in conduct that is both forum-connected *and* suit-related. *See Holland Am. Line, Inc*, 485 F.3d at 459 ("[S]pecific jurisdiction is tethered to a relationship between the forum and the claim."). Inasmuch as the State alleges forum-related conduct, it does not allege any connection to the claims in this case. Because the State does not allege that either UHG or OptumInsight engaged in "suit-related conduct" creating a "substantial connection with the forum State" (*Walden*, 571 U.S. at 284), there is no specific jurisdiction over either in Montana. *See also Kinnee*, 2022 U.S. Dist. LEXIS 193688, at *10.

## **CONCLUSION**

The Court should dismiss the Complaint against UHG and OptumInsight for lack of personal jurisdiction.

DATED this 23rd day of February, 2023.

MATOVICH, KELLER & HUSO, P.C.

/s/ Katherine S. Huso
Katherine S. Huso

*Attorney for UnitedHealth Group*
*Incorporated and OptumInsight, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word length limits of Local Rule 7.1(d)(2), United States District Court for the District of Montana, and contains 5183 words according to the word count function of Microsoft Office, excluding the caption, certificate of compliance, table of contents and authorities, exhibit index, and certificate of service.

DATED this 23rd day of February, 2023.

MATOVICH, KELLER & HUSO, P.C.

/s/ Katherine S. Huso
Katherine S. Huso

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2023, I served a copy of the foregoing on all counsel of record by filing this document with the Court's electronic filing (ECF) system, which automatically notifies all counsel of record.

MATOVICH, KELLER & HUSO, P.C.

/s/ Katherine S. Huso
Katherine S. Huso