Jennifer M. Studebaker
Tanya D. Ellis (*Admitted pro hac vice*)
Forman Watkins & Krutz LLP
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201
Telephone: (601) 960-8600
Fax: (601) 960-8613
jennifer.studebaker@formanwatkins.com
tanya.ellis@formanwatkins.com

Anna Schneider
Bureau Chief, Office of Consumer Protection
Montana Department of Justice
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
anna.schneider@mt.gov

W. Lawrence Deas (*Admitted pro hac vice*)
Liston & Deas, PLLC
605 Crescent Boulevard
Ridgeland, Mississippi 39157
Telephone: (601) 981-1636
lawrence@listondeas.com

Matthew C. McDonald (*Admitted pro hac vice*)
David Nutt & Associates, PC
605 Crescent Boulevard
Ridgeland, Mississippi 39157
Telephone: (601) 898-7302
mattm@davidnutt.com

Josh Wackerly (*Admitted pro hac vice*)
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, Texas 78620
Telephone: (512) 275-6550
josh@cicalapllc.com

***Attorneys for Plaintiff***

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

THE STATE OF MONTANA, *EX. REL.*, AUSTIN KNUDSEN, ATTORNEY GENERAL

       *PLAINTIFF,*

V.

ELI LILLY AND COMPANY, ET AL.

       *DEFENDANTS.*

Case No. 6:22-CV-00087-BMM-JTJ

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UNITEDHEALTH GROUP INCORPORATED AND OPTUMINSIGHT, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................3

ARGUMENT ...................................................................10

I.   Legal Standard...........................................................10

II.  UnitedHealth and OptumInsight Completely Ignore Key Allegations........12

III. The State's Factual Allegations Are Uncontested, and Must Be Accepted As True. ..................................................................14

IV. Based On the Uncontroverted Facts, Montana's Long-Arm Reaches UnitedHealth and OptumInsight For the State's Claims. ...........................15

    A.  UnitedHealth and OptumInsight are subject to Montana's long-arm because they transacted business in Montana..................................15

    B.  UnitedHealth and OptumInsight are subject to Montana's long-arm because they committed acts resulting in the accrual of a tort action in Montana. .....................................................................17

V.  The Uncontroverted Facts Satisfy Federal Due Process for Personal Jurisdiction Over UnitedHealth and OptumInsight......................................19

    A.  UnitedHealth and OptumInsight purposefully directed their activities at Montana. .....................................................................20

    B.  UnitedHealth and OptumInsight's contacts with Montana directly relate to the State's claims against them...........................................24

    C.  This Court's exercise of specific jurisdiction over UnitedHealth and OptumInsight for the State's claims is imminently reasonable........26

VI.  Alternatively, the State is Entitled to Jurisdictional Discovery Regarding UnitedHealth and OptumInsight's Montana Contacts, Involvement in the Scheme, and Corporate Structures. ............................................................27

CONCLUSION ........................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Abbey v. Chubb Corp.*,
  2006 WL 8449567 (D. Mont. Apr. 10, 2006)........................................ 11, 15, 26

*Burri Law PA v. Skurla*,
  35 F.4th 1207 (9th Cir. 2022) .................................................... passim

*Calder v. Jones*,
  465 U.S. 783 (1984)...........................................................................20

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) .............................................................12

*Doverspike v. Murphy*,
  2021 WL 3604813 (D. Mont. Aug. 10, 2021)...................................... 12, 17, 18

*Duffy v. Kaman Aerospace Corp.*,
  590 F. Supp. 3d 1317 (D. Mont. 2022)..................................................26

*First Nat'l Bank of Sioux Falls v. Estate of Carlson*,
  448 F. Supp. 3d 1091 (D. Mont. 2020)..................................................28

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
  141 S. Ct. 1017 (2021).................................................. 19, 23, 24, 25

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
  443 P.3d 407 (Mont. 2019)...............................................................11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ...........................................................28

*In re Packaged Seafood Prod. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018)..................................................21

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)............................................................... 11, 19

*Milky Whey, Inc. v. Dairy Partners, LLC*,
  342 P.3d 13 (Mont. 2015)..................................................................16

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ....................................................................... passim

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................. 22, 23

*Wolves of the Rockies, Inc. v. Stone*,
   2022 WL 123770 (D. Mont. Jan. 13, 2022)................................................. 11, 14

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).................................................................................. 19, 25

## STATUTES

MONT. CODE ANN. § 30-14-103 ................................................................................6

MONT. CODE ANN. § 30-14-111(3) ...........................................................................3

## RULES

MONT. R. CIV. P. 4(b)(1) .................................................................................. 11, 15

The State of Montana (the "State") submits this opposition to the Rule 12(b)(2) Motion to Dismiss filed by Defendants UnitedHealth Group Incorporated ("UnitedHealth") and OptumInsight, Inc. ("OptumInsight").

## INTRODUCTION

For nearly twenty years, Montana diabetics and health plan payors like the State have been increasingly overcharged for their necessary diabetes medications due to the unfair and deceptive practices of the Defendants—both individually and in concert as co-conspirators. The State of Montana filed suit in Montana state court to put an end to the Defendants' conduct and to recover the overpayments made by the State and Montana diabetics. (*See, e.g.,* ¶¶ 35–38, 521–23, 531).[1] The claims are based on Montana law, including the Montana Unfair Trade Practices and Consumer Protection Act ("MCPA"), and, in part, arise from the Montana Attorney General's sovereign interest in protecting the health and safety of all Montana residents. (¶¶ 39-40).

Defendants UnitedHealth and OptumInsight have not disputed the State's allegations regarding their involvement in the Insulin Pricing Scheme or the devastating impact the Scheme has had in Montana. Rather, UnitedHealth seeks to evade suit in Montana by mischaracterizing the State's claims to be solely based on

---

[1] All references in this Memorandum to parenthetical paragraph citations are to citations to the individually number paragraphs of the First Amended Complaint (Dkt. 40).

its status as OptumRx's parent company (Dkt. 95 at 5), while OptumInsight seeks to evade suit by arguing that its misconduct occurred elsewhere (*id.* at 6, 25). However, the uncontroverted allegations and evidence show that both in fact conducted Scheme-related activities specific to Montana. The State's allegations against UnitedHealth extend far beyond its role as a parent company and include UnitedHealth's own direct involvement in formulating and executing the Scheme, and providing PBM services in furtherance thereof. (¶¶ 184-88, 201-02, 206, 354(c)). OptumInsight analyzed data, including data specific to Montana, to advise the Defendants on setting the at-issue list prices and constructing the at-issue formularies in a manner that is most profitable for all Defendants. (¶¶ 193-96, 206, 325, 354). The conduct of both UnitedHealth and OptumInsight had the intended and foreseeable effect of harming Montana diabetics and the State (¶¶ 196, 354-55). UnitedHealth and OptumInsight provided no affidavits or evidence to contest the State's allegations, about their own forum contacts or their assistance of other Defendants in violations of the MCPA.

The complaint contains more than sufficient allegations of forum-related contacts by UnitedHealth and OptumInsight to support this Court's exercise of jurisdiction over them. The Mississippi court's decision they cite, (Dkt. 95 at 7), is inapposite because the facts and law under which this Court must assess jurisdiction are different. Further, UnitedHealth and OptumInsight made themselves subject to

jurisdiction in Montana as a result of their violations of the MCPA. *See* MONT. CODE ANN. § 30-14-111(3) (instructing the State to bring action against nonresident violators without a place of business in Montana in the district court of Lewis and Clark County – where the State initially filed this action). Under the uncontroverted factual allegations and the law of Montana, this Court has jurisdiction over UnitedHealth and OptumInsight and their Rule 12(b)(2) Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Approximately 80,000 Montana residents live with diabetes and, for most of them, insulin, which now costs thousands annually for a single diabetic, can be the difference between life and death. (¶¶ 1, 4, 230, 255). An insulin product that was originally priced at $20 when released in the late 1990s, now ranges between $300 and $700. (¶¶ 13–14). In recent years especially, the price of the drug has skyrocketed. In the last decade alone, insulin prices have increased as much as 1000%. (¶¶ 15, 266, Figs. 2–6).

As a result, one in four diabetics skip or ration critical doses which, in turn, leads to further health complications and additional costs. (¶¶ 30, 31, 267, 293, 454, 472–73, 479, 523). In Montana, the State has spent billions of dollars on increased healthcare costs for diabetes and related complications. (¶¶ 31–34, 293, 472–77, 523).

Tellingly, the drug has not changed in the past 20 years, and there has been little to no innovation in the product itself—today's $350 insulin is the exact drug originally priced at $20. (¶¶ 17, 247–59, 374(b)). In fact, it costs the Manufacturer Defendants less than $2 to make. (¶¶ 14, 517). Normal market forces are not at work. (¶¶ 335–38, 374–75).

### The Insulin Pricing Scheme

The Manufacturer Defendants dominate the diabetes drug market, manufacturing 99% of insulins dispensed in Montana. (¶¶ 5, 246, 263). The Manufacturers also, in coordination with the PBMs, set the list price for their diabetes drugs. (¶¶ 20, 296, 344). The list price is the basis for the price that nearly every consumer and payor pays for the at-issue drugs. (¶¶ 27, 360).

The PBM Defendants control approximately 80% of the market and manage the pharmacy benefits for the vast majority of Montana residents. (¶¶ 6, 313). In this role, the PBM Defendants establish drug lists called formularies that determine which diabetes drugs are covered and not covered for nearly every payor in Montana. (¶¶ 7, 9, 296, 339). Most prescribing doctors and patients, of course, opt for covered medications. (¶¶ 7–11). PBMs thus effectively control utilization of the at-issue drugs. (¶¶ 6–11, 339). In short, the Manufacturers control the product, the PBMs control the buyers, and collectively these two groups of Defendants control the price

paid by nearly every diabetic and payor in Montana, including the State.  (¶¶ 335–55, 360).

Knowing the importance of price, volume, and access, the Manufacturers and PBMs work together to maximize their own profits to the detriment of Montana residents and payors like the State.  (¶¶ 6–11, 355, 535–37).  Given that the PBMs and Manufacturers treat diabetes drugs as interchangeable, formulary inclusion depends on which Manufacturer increases the PBM's bottom lines the most.  (¶¶ 22, 247–59, 335, 348, 365–66).  The Manufacturers, knowing formulary position directly correlates to sales volume, simply agree to raise their reported prices and then secretly kick back a significant portion of that price to the PBM Defendants (referred to as "Manufacturer Payments"), and the PBM Defendants agree to grant the Manufacturers' medications favorable formulary positions.  (¶¶ 10, 20, 301–05, 340, 344, 348, 362–66).  The Manufacturers also know that every way the PBMs make money off the at-issue drugs is directly tied to the inflated list prices.  (¶¶ 342, 379, 389).  It is a win-win for Defendants: the PBMs make money from the increased prices and the secret kick back payments, while the Manufacturers lock in huge volume and maintain their own profit margins.  (¶¶ 23–24, 376–79, 410, 413). The result, however, is unconscionable – the most expensive diabetes drugs end up on the formularies used by most Montana residents and both Montana diabetics and the

State end up paying more so the Defendants can profit.  (¶¶ 22, 337, 348–50, 355, 365–66).

The successful design and implementation of the Insulin Pricing Scheme requires robust analysis of an immense amount of data, including but not limited to data on drug utilization, finances, and medical efficacy, by analysts who understand the goals of the Scheme and are able to translate the data into strategy.  OptumInsight provided this analysis for OptumRx and the Manufacturer Defendants at a minimum.  (¶¶ 193, 354(b)).  This is why OptumInsight is "an integral part of the Insulin Pricing Scheme."  (¶ 193).

### *The State's Claims*

The State brought suit in Montana state court against the Manufacturer Defendants and the PBM Defendants, including UnitedHealth and OptumInsight, for violations of the MCPA, conspiracy to violate the MCPA, and unjust enrichment.  (¶¶ 510–37).  In addition to suing on its own behalf as payor of State employee health plans and purchaser of the at-issue drugs for State-run facilities, the State sued on behalf of the tens of thousands of Montana residents injured by the Insulin Pricing Scheme.  (¶¶ 35, 220-222).

The MCPA prohibits unconscionable and deceptive trade practices in the conduct of trade or commerce within Montana.  MONT. CODE ANN. § 30-14-103.  The complaint alleges that each Defendant's conduct and involvement in the Insulin

Pricing Scheme was both unfair and deceptive in violation of the MCPA and caused injury in Montana to tens of thousands of Montana diabetics and the State. (¶¶ 510–24). Each purchase of the at-issue drugs at prices resulting from the Insulin Pricing Scheme, by the State or by any Montana resident, constitutes a separate violation of the MCPA. (¶ 519). Because the false prices generated by the Insulin Pricing Scheme still serve as the basis of payment for most payors, the harm is ongoing. (¶¶ 471, 483).

### *Relevant Jurisdictional Facts*

The complaint sets forth the following uncontroverted facts related to UnitedHealth and OptumInsight's involvement in the Insulin Pricing Scheme:

- UnitedHealth, through its executives and employees, is directly involved in PBM services and formulary construction at the center of the Insulin Pricing Scheme. (¶ 184).

- UnitedHealth and the Optum Defendants share numerous directors and executives. Through these shared directors and executives, UnitedHealth is directly involved in PBM services, formulary construction, and mail-order pharmacy services in Montana. (¶ 201). UnitedHealth and its subsidiaries conduct business in Montana, provide PBM services in Montana, construct

formularies for use in Montana, and dispense at-issue drugs to Montana diabetics.  (¶¶ 211-16).[2]

- UnitedHealth, throughout the relevant period, directly engaged with each of the Manufacturer Defendants in furtherance of the Scheme.  (¶¶ 186, 206, 354(c)).

- In at least 2010, 2016, 2017, and 2018, UnitedHealth executives met with executives of Manufacturer Eli Lilly to discuss their coordinated efforts related to the at-issue drugs, in furtherance of the Insulin Pricing Scheme. These executive exchange meetings included UnitedHealth CEOs (including Steve Hemsley), Executive Vice President of Corporate Affairs, and Senior Directors of Diabetes Alliance.  (¶¶ 186(a), 206(b)).

- In at least 2014, UnitedHealth's CEO and Senior Vice President met with executives of Manufacturer Novo Nordisk to discuss their coordinated efforts related to the at-issue drugs, in furtherance of the Scheme.  (¶ 186(b)). UnitedHealth's Executive Vice President also met with Novo Nordisk executives at UnitedHealth's headquarters, for the same purpose, in at least April 2015.  (¶ 206(a)).

_____

[2] "OptumRx" as used in these paragraphs is defined to specifically include UnitedHealth.  (*See* ¶ 204).

- In at least 2014 and 2018, executives of UnitedHealth met with executives of Manufacturer Sanofi in furtherance of the Scheme. These meetings included UnitedHealth CEOs. (¶ 186(c)).

- OptumInsight is registered to do business in Montana. (¶ 190). It may be served with process in Montana and is actively licensed by the Department of Insurance in Montana. (¶¶ 190–91).

- OptumInsight provides data and analysis on the profitability of the Insulin Pricing Scheme, which specifically results in injury to Montana diabetics and the State. (¶¶ 193-96, 354(b), 355).

- UnitedHealth and OptumInsight are members of the Pharmaceutical Care Management Association ("PCMA"). (¶ 323). The PCMA is the main PBM trade association and is central to the Insulin Pricing Scheme. (¶¶ 321–24). Multiple times a year, from 2010 to 2019, UnitedHealth and OptumInsight attended PCMA meetings and met privately with the Manufacturer Defendants for the purpose of developing and maintaining the Insulin Pricing Scheme. (¶¶ 321, 325, 328, 536). Notably, key at-issue lockstep price increases were made shortly after these Scheme-related meetings. (¶¶ 331–32, 536).

- OptumInsight meets with, conspires with, and coordinates directly with the Manufacturers and other PBM Defendants for the purpose of developing and maintaining the Insulin Pricing Scheme. (¶¶ 193, 196, 354(b)).

- OptumInsight provides data, analytics, and consulting services to healthcare companies, including the Manufacturer Defendants. (¶¶ 193, 196). Using market data related to drug utilization, internal medical studies, financial data, and other information provided and shared among the Manufacturers and PBMs, OptumInsight analyzes the profitability of the Insulin Pricing Scheme including with respect to the at-issue price increases and formulary construction, to the benefit of all Defendants. (¶ 193). As a result of these coordinated efforts, the Insulin Pricing Scheme has generated enormous profits for OptumInsight and the other Defendants at the expense of Montana diabetics and the State. (¶¶ 355, 384).

## ARGUMENT

This Court has personal jurisdiction over UnitedHealth and OptumInsight, and their Rule 12(b)(2) motion should be denied.

### I. Legal Standard

A federal court may exercise jurisdiction over an out of state defendant whenever doing so is permitted by the state's long-arm statute and federal due process. *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022) (citation

omitted).  "Case law favors finding personal jurisdiction."  *Abbey v. Chubb Corp.*, 2006 WL 8449567, at *1 (D. Mont. Apr. 10, 2006).

Montana's long-arm statute provides for jurisdiction broad enough that it has been said to "permit[] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process[.]"  *Wolves of the Rockies, Inc. v. Stone*, 2022 WL 123770, at *3 (D. Mont. Jan. 13, 2022) (citation omitted).  Specifically included in its reach are those who "transact[] . . . any business within Montana, or who allegedly committed "any act resulting in accrual within Montana of a tort action." MONT. R. CIV. P. 4(b)(1)(A)-(B).

If jurisdiction exists under the statute, the court then determines whether the exercise of personal jurisdiction comports with due process.  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.,* 443 P.3d 407, 412 (Mont. 2019), aff'd, 141 S. Ct. 1017 (2021).  Due Process requires non-resident defendants have "sufficient 'minimum contacts' with the forum state such that the exercising jurisdiction would not offend 'traditional notions of fair play and substantial justice.'"  *Burri,* 35 F.4[th] at 1212 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Ninth Circuit applies a three-part test when analyzing whether the exercise of specific jurisdiction comports with due process:

(1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself

of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)     The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)     The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).  "One tortious act, standing alone, may satisfy all three elements [of federal due process] if the act is aimed at a resident of the for[u]m or has an effect in the forum." *Doverspike v. Murphy*, 2021 WL 3604813, at *4 (D. Mont. Aug. 10, 2021) (Morris, J.) (citation omitted).

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party "need only make a *prima facie* showing of jurisdictional facts." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citation omitted). In evaluating the *prima facie* showing, the court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff. *Schwarzenegger,* 374 F.3d at 800 (citation omitted).

## II.     UnitedHealth and OptumInsight Completely Ignore Key Allegations.

UnitedHealth and OptumInsight purport to go paragraph-by-paragraph through the complaint allegations pertaining to them, to explain why each is

insufficient to confer personal jurisdiction. (Dkt. 95 at 18-25).[3] However, they omit several paragraphs containing factual allegations about their involvement in the Insulin Pricing Scheme. For example:

- **Paragraph 206** identifies executives of UnitedHealth (specifically including its CEO Steve Hemsley and Executive Vice President) and OptumInsight (including its Vice President) who met with specific executives of Manufacturer Defendants on specific dates, to jointly strategize in furtherance of the Insulin Pricing Scheme.

- **Paragraph 209** describes mergers and acquisitions through which UnitedHealth ultimately built OptumRx into a company with the market power to drive the Scheme.

- **Paragraph 325** alleges that officers and high-level representatives of each PBM Defendant – specifically including OptumInsight – attended PCMA conferences each year and engaged in private meetings in furtherance of the Scheme.

_____

[3] With regard to Paragraph 185, UnitedHealth alleges that the State mischaracterized a statement in its 2020 Sustainability Report. (Dkt. 95 at 20-21). However, the report was issued by UnitedHealth, and substitution of UnitedHealth for "we" in the statement is reasonable in light of the State's factual allegations about UnitedHealth's direct involvement in PBM services.

- **Paragraph 354(b)** alleges that OptumInsight compiled, analyzed, and shared data among the Defendants, such as market data, medical efficacy studies, and financial data, to enable Defendants to coordinate to set the false prices and construct the formularies that would maximize profits for all Defendants.

- **Paragraph 354(c)** recounts evidence from the United States Senate revealing that UnitedHealth received extra rebates for each client it converted to a formulary favoring Manufacturer Eli Lilly's drugs, and engaged with Lilly regarding pull-through plans to convert diabetics to Lilly drugs.

UnitedHealth and OptumInsight addressed none of these allegations, and they are therefore uncontroverted.

### III. The State's Factual Allegations Are Uncontested, and Must Be Accepted As True.

As set forth above, the complaint alleges more than sufficient facts to demonstrate UnitedHealth and OptumInsight's suit-related contacts with the State. It is telling that, while UnitedHealth and OptumInsight attempt to minimize the State's allegations, mischaracterizing the claims as "only" being based on narrow roles, (Dkt. 95 at 5), they do not provide any evidence to contradict the allegations. As a result, the allegations must be taken as true. *Wolves of the Rockies*, 2022 WL 123770, at *3 ("[J]urisdictional facts are derived largely from the complaint, unless

controverted by a declaration or affidavit.") (citation omitted). "Unless defendants directly contravene the plaintiff, the plaintiff's facts are deemed true and in the event of conflicting facts, the plaintiff's facts are favored for purposes of a determination of jurisdiction." *Abbey*, 2006 WL 8449567, at *1 (citation and internal quotation marks omitted). *See also Burri,* 35 F.4th at 1213 ("[A] court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all undisputed facts in favor of the plaintiff."). Because no contradictory affidavit or evidence was submitted, the allegations of the complaint are taken as true. The State's allegations are sufficient to confer jurisdiction.

## IV. Based On the Uncontroverted Facts, Montana's Long-Arm Reaches UnitedHealth and OptumInsight For the State's Claims.

### A. UnitedHealth and OptumInsight are subject to Montana's long-arm because they transacted business in Montana.

Under Montana's long-arm, "any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from . . . the transaction of any business within Montana." MONT. R. CIV. P. § 4(b)(1)(A). The long-arm reaches not only those that personally transact business in Montana, but also those that transact business through an employee or agent. MONT. R. CIV. P. § 4(b)(1). The transacting-business prong of the long-arm statute requires "far fewer contacts with the forum state than are necessary to support general jurisdiction on the theory that the defendant is 'doing business' in the forum state." *Milky Whey, Inc. v. Dairy*

*Partners, LLC*, 342 P.3d 13, 18 (Mont. 2015) (quoting 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069.3 (4th ed. 2022)).

As alleged by the State, and uncontroverted by UnitedHealth, UnitedHealth through its executives and employees is directly involved in the PBM services and formulary construction giving rise to the State's claims for injuries to Montana. (¶¶ 184, 201). As alleged, the PBM services provided by UnitedHealth throughout the State of Montana are substantial and constitute the transaction of business in Montana. They are also directly related to the State's claims, because the business transacted by UnitedHealth *is* the carrying-out of the Insulin Pricing Scheme in Montana. With regard to OptumInsight, the State alleged – and OptumInsight implicitly admitted – that it is registered to do business in Montana and holds an active license with Montana Department of Insurance. (¶¶ 190-91; Dkt. 95 at 24). OptumInsight does not deny that it sought and obtained this registration and license for the purpose of transacting business in Montana. Given that data and analytics are the core of OptumInsight's business, OptumInsight cannot (and did not) deny that it transacted data and analytics business in Montana – the business functions that are the basis of the State's claims against it.

**B. UnitedHealth and OptumInsight are subject to Montana's long-arm because they committed acts resulting in the accrual of a tort action in Montana.**

"To determine whether specific jurisdiction exists for tort claims under Montana's long-arm statute, the Montana Supreme Court directs courts to examine: (1) whether there is a valid claim resulting in accrual of a tort action within Montana; and (2) whether the valid claim for relief arises from the alleged actions." *Doverspike,* 2021 WL 3604813, at *3 (citations omitted).

As detailed above, the State has made numerous allegations – uncontroverted by UnitedHealth and OptumInsight – regarding their direct involvement in establishing and executing the Scheme through PBM services and formulary construction. (¶¶ 184-88, 201-202, 206, 325, and 354(c) (UnitedHealth); ¶¶ 193-96, 206(a), 325, 354(c) (OptumInsight)). UnitedHealth and OptumInsight mischaracterize the allegations to suggest that the State alleges only injury in Montana, with no underlying actions in Montana. (Dkt. 95 at 15). The State in reality specifically alleged the ways in which the Scheme executed by UnitedHealth and OptumInsight *in Montana* violated the MCPA, caused injury to Montana consumers, and unjustly enriched the Defendants including UnitedHealth and OptumInsight. (¶¶ 510-533). The State's uncontroverted allegations are more than sufficient to state a claim against UnitedHealth and OptumInsight for violations of the MCPA and unjust enrichment – which sound in tort.

The State's claims against UnitedHealth and OptumInsight also include a claim for civil conspiracy. (¶¶ 534-537). Under Montana law, there are five elements required to prove a civil conspiracy:

> (1) two or more persons (a person may be a corporation); (2) an object to be accomplished; (3) a meeting of the minds on the object; (4) one or more unlawful acts; and (5) damages as to the proximate result.

*Doverspike*, 2021 WL 3604813, at *3 (citation omitted). "A plaintiff can use circumstantial evidence to establish a civil conspiracy." *Id.* (citation omitted). In *Doverspike*, a Montana-registered vehicle was placed under a receivership order pending determination of its rightful owner by a Montana court. *Id.* The plaintiff alleged that the two defendants then conspired to deprive her of the vehicle, by knowingly arranging between themselves to transfer the vehicle from Nevada to Florida and conceal the transfer. *Id.* at *2. Neither the plaintiff nor defendants lived in Montana, the vehicle was not stored in Montana at any point during the dispute, and the co-defendants' transfer and subsequent cover-up all occurred outside the state. *See id.* at *1-2. However, the defendants' actions, based on a meeting of the minds, "potentially deprived" the plaintiff from full relief in her Montana lawsuit. *Id.* at *4. Therefore, this Court found that the tort prong of the Montana long-arm reached the defendants for purposes of the plaintiff's civil conspiracy claim. *Id.*

Here, the State has alleged UnitedHealth and OptumInsight conspired with other defendants to accomplish an agreed object which was unlawful, which was

intended to result in damage to Montana and Montana diabetics, and in fact resulted in damages to Montana and Montana diabetics. Here, as in *Doverspike*, the tort prong of the long-arm statute is satisfied.

The State's uncontroverted facts establish that Montana's long-arm statute reaches both UnitedHealth and OptumInsight for purposes of the State's claims.

## V. The Uncontroverted Facts Satisfy Federal Due Process for Personal Jurisdiction Over UnitedHealth and OptumInsight.

Federal due process requires a defendant have "such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Int'l Shoe Co.*, 326 U.S. at 316–17). "[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

Based on the State's uncontroverted allegations, UnitedHealth and OptumInsight each have sufficient minimum contacts with Montana to anticipate

being haled into court in Montana, and specific jurisdiction comports with federal due process.[4]

### A. UnitedHealth and OptumInsight purposefully directed their activities at Montana.

For suits sounding in tort, a purposeful direction analysis is the first prong of the test for due process. *Schwarzenegger*, 374 F.3d at 802. This analysis "usually consists of evidence of the defendant's actions *outside the forum state* that are directed at the forum[.]" *Id.* at 803 (emphasis added). "The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who purposefully direct[s] his activities at residents of a forum, even in the absence of physical contacts with the forum." *Id.* (internal quotations omitted).

The Ninth Circuit applies the three-part "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984), finding purposeful direction if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state[.]" *Burri*, 35 F.4th at 1213. "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction

---

[4] The State does not contend that this Court has general jurisdiction over UnitedHealth or OptumInsight.

of a foreign act having effect in the forum state." *Schwarzenegger*, 374 F.3d at 803

(citations and internal quotations omitted).

### 1. UnitedHealth and OptumInsight committed intentional acts.

"The intentional act threshold is not a high bar." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1157 (S.D. Cal. 2018). The Ninth Circuit "construe[s] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.

As alleged by the State, UnitedHealth was directly involved in PBM services, formulary construction, mail order pharmacy services, and Manufacturer Payments in furtherance of the Insulin Pricing Scheme, and publicly touted its involvement in those functions, though misrepresenting its aims. (¶¶ 184-88, 201-02, 206, 212). UnitedHealth specifically offered PBM services to Montana payors, including the State, created formularies for use in Montana, and dispensed the at-issue drugs in Montana through its mail order pharmacies. (¶¶ 211-12, 214-16). As for OptumInsight, the State alleged that it provided the data and analysis, including for Montana, to maximize the Scheme's profits, (¶¶ 193, 196), and coordinated with other Defendants in furtherance of the Scheme (¶¶ 206(a), 325, 354(b)). This conduct by UnitedHealth and OptumInsight was ongoing throughout the relevant period, and plainly constitute intentional acts.

The State further alleges that UnitedHealth and OptumInsight were members of the PCMA and exerted control over the PCMA. (¶ 323). It alleges that the PCMA, under their control, brought numerous lawsuits and lobbying campaigns to block drug pricing transparency efforts, and block rebate regulations that would impede the Scheme. (¶ 334). UnitedHealth and OptumInsight engaged in these efforts to conceal the Insulin Pricing Scheme. (*Id.*). These acts by UnitedHealth and OptumInsight are also intentional.

### 2. UnitedHealth and OptumInsight's acts were expressly aimed at Montana.

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. The defendant in *Schwarzenegger* was an Ohio car dealership that ran advertisements in a local Ohio newspaper, using Arnold Schwarzenegger's photo without his permission. *Id.* at 799. Because "[t]he purpose of the Advertisement was to entice Ohioans to buy or lease cars from [defendant] . . . and [defendant] had no reason to believe that any Californians would see it and pay a visit to the dealership[,]" the Ninth Circuit found the defendant's act was expressly aimed at a local market in Ohio, not California. *Id.* at 807.

UnitedHealth and OptumInsight cite *Walden v. Fiore*, 571 U.S. 277 (2014), suggesting their suit-related conduct does not connect them to Montana. (*E.g.*, Dkt. 95 at 27). However, the facts of Walden are highly distinguishable from the facts

alleged here. The defendant in *Walden* was a law enforcement officer working at the Atlanta airport as part of a drug interdiction program. *Walden*, 51 U.S. at 279. The officer, in Atlanta, seized cash of questionable origin from the plaintiffs, who happened to be residents of Nevada traveling through the Atlanta airport. *Id.* at 280. Because the officer had acted entirely in Georgia, in no way targeting Nevada, the Supreme Court held that Nevada lacked jurisdiction. *Id.* at 291.

Here, in direct contrast to *Schwarzenegger* and *Walden*, UnitedHealth's intentionally provided PBM services *to Montanans*, created formularies for use *in Montana*, and dispensed at-issue drugs *to Montanans in Montana*. OptumInsight intentionally analyzed *Montana* data to advise other Defendants in maximizing the Scheme's profits in *Montana.* UnitedHealth and OptumInsight both intentionally, through the PCMA, brought lawsuits and campaigns to perpetuate the Scheme and hide it from the State and Montanans. Each of these intentional acts by UnitedHealth and OptumInsight were expressly aimed at Montana. Whether their intentional acts were also aimed elsewhere is beside the point. *Ford*, 141 S. Ct. at 1027 (explaining that if a company's business deliberately extended into a particular state, that state's courts may exercise jurisdiction, even if the company's business *also* deliberately extended into other states).

### 3. UnitedHealth and OptumInsight knowingly caused harm in Montana.

The final prong of the effects test "asks whether [the defendant] knew or should have known that his actions were likely to cause [] harm in the forum state." *Burri*, 35 F.4th at 1215. UnitedHealth and OptumInsight cannot reasonably deny knowledge that their conduct in analyzing data to further the Scheme, providing PBM services, constructing formularies, dispensing the at-issue drugs, and blocking transparency, was likely to cause harm to Montanans, in Montana, through falsely inflated prices which the State and diabetic Montanans were forced to pay. Indeed, their acts were *designed* to have that effect, and they each profited from the harm to Montanans – "the traditional quid pro quo justification for finding purposeful availment[.]" *Schwarzenegger*, 374 F.3d at 803.

Because UnitedHealth and OptumInsight purposefully directed their activities at Montana, the first factor of the federal due process analysis is satisfied.

### B. UnitedHealth and OptumInsight's contacts with Montana directly relate to the State's claims against them.

The second factor, relatedness, is also met. The *Ford* Court recently reiterated that a defendant's in-state contacts need only "relate to" the litigation—a causative relationship is not necessary. *Ford*, 141 S. Ct. at 1026. Here, UnitedHealth through its work as a Montana PBM utilized the false prices arising from the Insulin Pricing Scheme and knowingly insisted that Montana payors pay for the at-issue drugs on

the basis of those prices, while concealing its role in the generation of the prices. (¶¶ 204, 211-16). OptumInsight's analyses of Montana data were intended to aid in maximizing the Scheme's profitability in Montana. (¶¶ 193, 196, 354(b)). The State's claims against UnitedHealth and OptumInsight directly relate to their contacts with Montana.

As the United States Supreme Court recently clarified, a company "purposefully availing itself" of a certain market in a particular state "has clear notice of its exposure in that State" to lawsuits related to harms caused by that product or conduct. *See Ford*, 141 S. Ct. at 1027. Put another way, if a suit arises from efforts by a company "to serve, *directly or indirectly*, the market for its product in several or all other States, it is not unreasonable to subject it to suit in one of those States" if its product (or service) causes an injury. *Id.* (emphasis supplied) (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Here, the allegations of the complaint make clear that UnitedHealth and OptumInsight acted in Montana, and successfully exploited the Montana market for their financial gain. By serving as a PBM in Montana, and doing so in furtherance of the Insulin Pricing Scheme, UnitedHealth played an active role in causing the harm underlying the State's claims. OptumInsight's conduct in providing data analysis foundational to the Scheme in Montana is likewise directly related to the

State's claims here.  Both UnitedHealth and OptumInsight had clear notice that they would be subject to the state's jurisdiction.

### C. This Court's exercise of specific jurisdiction over UnitedHealth and OptumInsight for the State's claims is imminently reasonable.

It is Defendants' burden to "present a compelling case that exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (internal quotations omitted).  UnitedHealth and OptumInsight cannot do so.  In the Ninth Circuit, seven factors are evaluated to determine whether the exercise of personal jurisdiction is reasonable:

> (1) the extent of the defendant's purposeful interjection into Montana;
> (2) the burden on defendant of defending in Montana; (3) the extent of
> the conflict with the sovereignty of another possible forum state; (4)
> Montana's interest in adjudicating the dispute; (5) the most efficient
> judicial resolution of the controversy; (6) the importance of Montana to
> plaintiff's interest in convenient and effective relief; and (7) the
> existence of an alternative forum.

*Duffy v. Kaman Aerospace Corp.*, 590 F. Supp. 3d 1317, 1327 (D. Mont. 2022) (Morris, J.) (quoting *Abbey*, 2006 WL 8449567, at *3).

Here, both UnitedHealth and OptumInsight purposefully interjected themselves into Montana in order to profit from the Montana market, as discussed above (factor 1).  There is no burden on either entity to defend in this forum: the UnitedHealth Group corporate family ranks fifth on the Fortune 500 list, UnitedHealth and OptumInsight's business is national in scope, and they share counsel in this matter with their co-defendant affiliates that do not contest personal

jurisdiction (factor 2). Maintenance of the suit in this Court poses no conflict with the sovereignty of any possible forum state (factor 3). On the other hand, Montana has a strong – indeed, exclusive – interest in adjudicating this dispute, given that it is brought by Montana's Attorney General, under the Montana Unfair Trade Practices and Consumer Protection Act, for injuries caused to diabetic Montanans and the State of Montana (factor 4). Efficient resolution is best served by adjudication of the claims against UnitedHealth and OptumInsight with the claims against the other Defendants, including their affiliate OptumRx Inc. (which does not contest the Court's jurisdiction), rather than forcing the State to pursue its claims against them separately in a different forum (factor 5). For all these reasons, adjudication of this matter in Montana is important to the State's interest in convenient and effective relief (factor 6). Finally, there is no alternative forum better suited to adjudicate this case (factor 7).

The State's uncontroverted allegations are more than adequate to afford this Court personal jurisdiction over UnitedHealth and OptumInsight in this matter.

## VI. Alternatively, the State is Entitled to Jurisdictional Discovery Regarding UnitedHealth and OptumInsight's Montana Contacts, Involvement in the Scheme, and Corporate Structures.

If this Court finds the State falls short of making its required showing of personal jurisdiction, the State has, at a minimum, shown enough to warrant jurisdictional discovery related to UnitedHealth and OptumInsight's involvement in

the Insulin Pricing Scheme. UnitedHealth and OptumInsight attempt to obfuscate and minimize their roles in the Insulin Pricing Scheme by asserting they are merely a "corporate parent" and "affiliate" (respectively) of related co-defendants. (Dkt. 95 at 17). But currently, any information that would further illuminate their roles in the Scheme and the corporate relationship or lack of corporate separateness between them and related entities is in the sole possession of UnitedHealth and OptumInsight.

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *First Nat'l Bank of Sioux Falls v. Estate of Carlson*, 448 F. Supp. 3d 1091, 1108 (D. Mont. 2020) (citation omitted). A district court, in fact, abuses its discretion if it denies discovery when the "record is simply not sufficiently developed to enable" a determination on personal jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Far from conclusively refuting the existence of personal jurisdiction, UnitedHealth and OptumInsight's response fails to address myriad allegations made by the State. Limited discovery is needed to ascertain specific, discrete facts such as:

- UnitedHealth and OptumInsight's participation and influence over the PCMA, which the State believes is at the center of the Scheme;

- How UnitedHealth employees, including executives co-employed with Optum, shape and direct policies and strategic goals that guide Optum PBM services;

- UnitedHealth and OptumInsight's communications and coordination with Manufacturer Defendants at specific executive meetings of which the State is aware, including meetings in 2015 (involving both UnitedHealth and OptumInsight) and 2016 (involving UnitedHealth).

Throughout this Response, the State has established that this Court may exercise personal jurisdiction over UnitedHealth and OptumInsight because each, individually, has sufficient minimum contacts with Montana and falls within Montana's long-arm statute. Yet, if this Court decides otherwise, it is appropriate to allow a limited period of jurisdictional discovery to accurately assess UnitedHealth and OptumInsight's involvement in the Insulin Pricing Scheme in Montana.

## CONCLUSION

For all the reasons discussed above, the State of Montana respectfully requests this Court deny UnitedHealth and OptumInsight's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.

RESPECTFULLY SUBMITTED this the 31st day of March, 2023.

/s/ Jennifer M. Studebaker
Jennifer M. Studebaker
Forman Watkins & Krutz LLP
210 East Capitol Street, Suite 2200

Jackson, Mississippi 39201
Telephone: (601) 960-8600
Fax: (601) 960-8613
jennifer.studebaker@formanwatkins.com

*/s/ Tanya D. Ellis*
Tanya D. Ellis (*Admitted pro hac vice*)
Forman Watkins & Krutz LLP
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201
Telephone: (601) 960-8600
Fax: (601) 960-8613
tanya.ellis@formanwatkins.com

/s/ *Anna Schneider*
Anna Schneider
Bureau Chief, Office of Consumer Protection
Montana Department of Justice
P.O. Box 200151
Helena, Montana 59620-0151
Telephone: (406) 444-4500
anna.schneider@mt.gov

/s/ *W. Lawrence Deas*
W. Lawrence Deas (*Admitted pro hac vice*)
Liston & Deas, PLLC
605 Crescent Boulevard
Ridgeland, Mississippi 39157
Telephone: (601) 981-1636
lawrence@listondeas.com

/s/ *Matthew C. McDonald*
Matthew C. McDonald (*Admitted pro hac vice*)
David Nutt & Associates, PC
605 Crescent Boulevard
Ridgeland, Mississippi 39157
Telephone: (601) 898-7302
mattm@davidnutt.com

/s/ Josh Wackerly
Josh Wackerly (*Admitted pro hac vice*)
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, Texas 78620
Telephone: (512) 275-6550
josh@cicalapllc.com

**Attorneys for Plaintiff**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the lines in this document are double spaced, that the type in this document is proportionally spaced and is in 14-point font, and that this document consists of a total of 6,401 words, excluding the table of contents, table of citations, certificate of service, and certificate of compliance.

/s/ *Tanya D. Ellis*
Tanya D. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Tanya D. Ellis*
Tanya D. Ellis