J. Daniel Hoven
BROWNING, KALECZYC, BERRY &
HOVEN, P.C.
800 N. Last Chance Gulch, Ste. 101
Helena, Montana 59624
(406) 443-6820 (p)
(406) 443-6883 (f)
dan@bkbh.com

*Attorneys for Express Scripts
Defendants*

Bruce F. Fain
CROWLEY FLECK PLLP 500
Transwestern Plaza II 490 North 31st
Street P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-3181
bfain@crowleyfleck.com

*Attorneys for CVS Caremark
Defendants*

Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & HUSO,
P.C.
2812 1st Avenue North, Suite 225
Billings, MT 59101
Phone: (406) 252-5500
Fax: (406) 252-4613
*cmatovich@mkhattorneys.com*
*khuso@mkhattorneys.com*

*Attorneys for UnitedHealth Group
Incorporated, OptumRx, Inc., and
OptumInsight, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| THE STATE OF MONTANA, EX. REL., AUSTIN KNUDSEN, ATTORNEY GENERAL, | |
| *Plaintiff,* | Case No. 6:22-cv-00087-BMM |
| v. | Hon. Brian Morris |
| ELI LILLY AND COMPANY, et al., | |
| *Defendants.* | |

## PBM DEFENDANTS' REPLY BRIEF
## <u>SUPPORTING THEIR MOTION TO DISMISS</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ................................................................................ 1

ARGUMENT ........................................................................................ 2

   I.   All of the State's Claims Are Time-Barred. ..................................... 2

   II.  The Complaint fails to satisfy Rule 9(b). ...................................... 6

     A.  Rule 9(b) applies to each of the State's claims. ........................ 6

     B.  The State fails to allege its claims with particularity. ................. 8

   III.    The State Fails to State a MCPA Claim Against the PBMs. ..................... 10

     A.  The State fails to state a claim against the PBMs for deceptive practices under the MCPA. ........................................................... 10

     B.  The State fails to state a claim against the PBMs for unfair practices under the MCPA. ........................................................... 12

     C.  The alleged PBM conduct falls outside the MCPA's scope. ...................... 13

   IV.    The State's Unjust Enrichment Claim Fails As a Matter of Law. ............. 14

     A.  The State's PBM contract forecloses its unjust enrichment claim. ............ 14

     B.  The State lacks standing to pursue a claim for unjust enrichment in its *parens patriae* capacity. ...................................................... 16

   V.  The State Fails to Plausibly Allege a Civil Conspiracy Involving the PBMs. …………………………………………………………………18

   VI.    The Court Should Dismiss the PBMs' Corporate Parents and Uninvolved Affiliates. ........................................................................ 19

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE ...................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982)................................................................16

*ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*,
    425 P.3d 651 (Mont. 2018)......................................................14

*Anderson v. Boyne USA, Inc.*,
    2023 WL 2161413 (D. Mont. Feb. 22, 2023)...........................4

*Associated Mgmt. Servs. v. Ruff*,
    424 P.3d 571 (Mont. 2018)......................................................15

*Barnes v. 3 Rivers Tel. Coop., Inc.*,
    2022 WL 3212100 (D. Mont. Aug. 9, 2022)............................12

*Betz v. Trainer Wortham & Co., Inc.*,
    236 F. App'x. 253 (9th Cir. 2007)...........................................5

*California v. Frito-Lay, Inc.*,
    474 F.2d 774 (9th Cir. 1973) ..................................................16

*Christian v. Atl. Richfield Co.*,
    358 P.3d 131 (Mont. 2015)......................................................4

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ..................................................8

*Filler v. United Parcel Serv., Inc.*,
    2021 WL 5106461 (D. Mont. Sept. 21, 2021)..........................15

*Harris Cnty., Texas v. Eli Lilly & Co.*,
    2022 WL 479943 (S.D. Tex. Feb. 16, 2022).............................15

*Hein v. Sott*,
    353 P.3d 494 (Mont. 2015)......................................................5

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................6, 7

*Keegan v. American Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) .................................................7

*Kostelecky v. Peas in a Pod LLC*,
    518 P.3d 840 (Mont. 2022) ..................................................................12

*Osterman v. Sears*,
    80 P.3d 435 (Mont. 2003) .....................................................................4

*Paatalo v. J.P. Morgan Chase Bank, N.A.*,
    2011 WL 13130862 (D. Mont. May 18, 2011) ...........................18, 19

*Pfau v. Mortenson*,
    858 F. Supp. 2d 1150 (D. Mont. 2012)...............................................10

*PNC Bank, Nat. Ass'n v. Wilson*,
    2015 WL 3887602 (D. Mont. June 23, 2015) .....................................7

*Prudencio v. Midway Importing, Inc.*,
    831 F. App'x 808 (9th Cir. 2020) .......................................................19

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) .............................................................11

*Rohrer v. Knudson*,
    203 P.3d 759 (Mont. 2009)...................................................................12

*Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.*,
    922 F. Supp. 2d 1142 (D. Mont. 2013)...............................................17

*United States ex rel. Silingo v. Wellpoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) ............................................................8, 9

*Simmons Oil Corp. v. Holly Corp.*,
    852 P.2d 523 (Mont. 1993)..................................................................18

*Stage One, Inc. v. Hosp. Lodging S., LLP*,
    2014 WL 3405985 (D. Mont. July 10, 2014) ......................................4

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................. 9

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.*,
2023 WL 2628697 (C.D. Cal. Feb. 9, 2023) ....................................... 7

*T-4 Corp. v. McDonald's Corp.*,
2017 WL 3037422 (D. Mont. July 17, 2017) .................................... 18

*United States v. Bestfoods*,
524 U.S. 51 (1998)................................................................................ 19

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) .............................................................. 10

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ............................................................... 8

*Young v. Era Advantage Realty*,
513 P.3d 505 (Mont. 2022)........................................................... 11, 12

## Statutes

42 U.S.C. § 1396r–8.............................................................................. 1

Mont. Code § 27-2-202(3) ..................................................................... 2

Mont. Code § 27-2-211(1)(c).................................................................. 2

Mont. Code § 30-14-102 .................................................................. 13, 14

Mont. Code § 30-14-103 .................................................................... 6, 13

Mont. Code § 33-2-2401 ....................................................................... 13

Mont. Code § 33-2-2402(7)(a)........................................................... 1, 13

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ................................................ 7

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(2)......................................................................... 1

Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/fraud (Apr. 12,
2023) ................................................................................................................7

Restatement (Third) of Restitution and Unjust Enrichment, § 48
(2011) ............................................................................................................16

# **INTRODUCTION**[1]

The State's claims each hinge on an imagined "Insulin Pricing Scheme"—a purported, industry-wide conspiracy between the PBM Defendants and the three largest insulin manufacturers, Eli Lilly, Novo Nordisk, and Sanofi, to drive up insulin prices in exchange for rebates.[2]  But the State's real complaint is with increasing insulin prices—prices the PBMs do not set—*see, e.g.*, FAC ¶¶ 13, 15-16, 20, 268-73, 275-82, not with the PBMs or their negotiation of rebates and discounts designed to offset list prices and lower net costs to clients.

The rebates and other discounts PBMs negotiate are standard industry practice and have been recognized by the Montana legislature as legitimate.  *See* Mont. Code § 33-2-2402(7)(a) (PBMs, among other things, "negotiate[] rebates, discounts, or other financial incentives and arrangements with manufacturers, wholesale distributors, or other third parties.").  Federal law not only contemplates that PBMs will negotiate rebates but affirmatively requires rebates in certain circumstances. *See* 42 U.S.C. § 1396r–8.

---

[1] Defendants Evernorth Health, Inc., CVS Health Corporation, UnitedHealth Group Incorporated, and OptumInsight, Inc. also have filed motions seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction; they join this brief subject to and without waiving those personal jurisdiction defenses.

[2] Capitalized terms not defined herein have the same meaning ascribed to them by the PBM Defendants in their Memorandum Supporting Their Motion to Dismiss ("Motion" or "Mot.").  ECF No. 97.

Ignoring that reality, the State's Opposition only serves to confirm that (i) each of the State's claims is time-barred; (ii) the State fails to allege facts with Rule 9(b) particularity sufficient to state a claim against any PBM; (iii) the State's allegations of unfair and deceptive practices fail to identify any actionable misrepresentation or act by any PBM that is contrary to established public policy; (iv) the State's unjust enrichment claim is barred by the existence of an express contract governing the dispute at issue; (v) the State has alleged no meeting of the minds sufficient to state a claim for conspiracy; and (vi) the State is unable to identify any specific involvement by any PBM parent entity in the conduct alleged in the Complaint.

The Complaint fails to adequately plead claims for violation of the MCPA, unjust enrichment, and conspiracy against the PBMs. This Court should dismiss the State's claims against the PBM Defendants with prejudice.

## ARGUMENT

### I. All of the State's Claims Are Time-Barred.

Acknowledging that all of its claims are governed by the applicable statutes of limitations, Mont. Code § 27-2-211(1)(c) (two years for MCPA claim); Mont. Code § 27-2-202(3) (three years for unjust enrichment), the State seeks to excuse its tardy filing of the Complaint by asserting that "it was not until the release of the

January 2021 Senate Insulin Report . . . that the State had notice of Defendants' Insulin Pricing Scheme." Opp'n at 16.

That argument fails as a matter of law. The face of the Complaint reveals that the State's claims accrued years prior. *See* Mot. at 6-9. The Complaint borrows heavily from pleadings filed in earlier lawsuits from several different jurisdictions making substantially similar allegations. *See, e.g.*, Complaint, *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1. And the State's allegations are replete with references to events that occurred five, six, and, in some instances, ***more than ten years*** before the State initiated suit. *See, e.g.*, FAC ¶¶ 92 (2012, 2013, 2014, 2016, and 2017), 134 (2013, 2014, and 2015), 186 (2010, 2014, 2016, 2017, and 2018). Given these allegations, the Court need not credit a disingenuous assertion that the State was unable to file this case until after the January 2021 Senate Report. *See* Opp'n at 16.

Nor is there merit to the State's assertions that the discovery rule or continuing tort doctrine tolled the statute of limitations. Not only does the State point to alleged, growing "public outcry" against the PBMs over "the ***past five years***," FAC ¶ 487 (emphasis added), it alleges that all Defendants, including the PBMs, "[a]dmit[ted]" to engaging in the Insulin Pricing Scheme no later than April 10, 2019 during testimony before Congress, *id.* ¶¶ 356, 365. Those alleged admissions were live-

streamed nationally ***more than three years before*** the State filed suit.[3]  So the foundation of the State's claim isn't some undiscovered set of facts that might be subject to the discovery rule; it is widely reported public statements.  The State's delay until September 29, 2022 undermines any claims of diligence or conclusory allegations that estoppel or fraudulent concealment might excuse its tardiness.  *See Osterman v. Sears*, 80 P.3d 435, 441 (Mont. 2003).

The continuing tort doctrine also does not apply to the State's claims.  "A continuing tort is one that is 'not capable of being captured by a definition of time and place of injury because it is an active, progressive and continuing occurrence.  It is taking place at all times.'"  *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 140 (Mont. 2015) (citation omitted).  The doctrine applies only "in cases where the tortious act can be reasonably abated."  *Stage One, Inc. v. Hosp. Lodging S., LLP*, 2014 WL 3405985, at *11 (D. Mont. July 10, 2014).  As the State recognizes, the continuing tort doctrine is "most frequently associated with nuisance and trespass claims" (Opp'n at 16).  The State does not and cannot explain why its alleged violation of the MCPA can be "reasonably abated" like a nuisance.  *Id.*  And the State cites no authority applying the doctrine to MCPA claims.  Opp'n at 16.[4]

---

[3] *See* https://www.congress.gov/event/116th-congress/house-event/109299.

[4] In addition to not involving an MCPA claim, *Anderson* is distinguishable for the added reason that the Court's application of the doctrine in that case rested on the defendant's compelling fiduciary duty—a duty not alleged to be at issue here. *Anderson v. Boyne USA, Inc*., 2023 WL 2161413, at *4 (D. Mont. Feb. 22, 2023).

Lastly, the State's citation to *Hein* actually supports the PBMs' argument. Opp'n at 17 (citing *Hein v. Sott*, 353 P.3d 494, 498 (Mont. 2015)).  In *Hein*, the Montana Supreme Court concluded that the plaintiff's Consumer Protection Act claims for damages arising two years before plaintiff filed his complaint were barred by the statute of limitations.  *Hein*, 353 P.3d at 498.  The Court emphasized that separate misrepresentations that occurred within the limitations period were not barred "[t]o the extent [the] complaint allege[d] ***separate acts of deception*** on separate occasions."  *Id.* (emphasis added).  Here, the State's Opposition identifies no conduct by any PBM within two years of the Complaint that is actionable under the MCPA; neither does the Complaint allege a single misrepresentation by any PBM within the MCPA's two-year statute of limitations.  And the examples of allegedly actionable conduct identified by the State in Opposition to the Manufacturers' Motion either do not apply to the PBMs, Mfr. Opp'n at 43 ("lockstep raising of prices by the Manufacturer Defendants"), or are not in themselves "separate acts of deception," as *Hein* requires, *see* 353 P.3d at 498; *see also* Mfr. Opp'n at 43 (alleging meetings at trade association and industry conferences held "each year").

---

The Ninth Circuit's unpublished decision in *Betz v. Trainer Wortham & Co., Inc.*, 236 F. App'x. 253 (9th Cir. 2007) is inapposite because it applied only California law.

The State's own pleading shows it was aware of the alleged conduct more than three years before filing suit, and with reasonable—in fact, any—diligence, it should have been aware much sooner. The two-year (for MCPA) and three-year (for unjust enrichment and conspiracy) statutes of limitations bar the State's claims in their entirety.

## II. The Complaint fails to satisfy Rule 9(b).

### A. Rule 9(b) applies to each of the State's claims.

Despite alleging that an "unfair and deceptive scheme" lies at "the root of" its claims, the State asserts that Rule 9(b) does not apply to its claims. FAC ¶ 12; Opp'n at 20.[5] That argument is a non-starter. Binding authority requires that allegations based on "a unified course of fraudulent conduct . . . must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The MCPA addresses conduct alleged to be either "unfair" or "deceptive." Mont. Code § 30-14-103. While the State points to a handful of non-binding cases where courts in other jurisdictions have declined to apply Rule 9(b) to claims brought under the "unfairness prong," *see* Opp'n at 20, none of those cases involved allegations of deception or misrepresentation under the MCPA.

---

[5] The State goes so far in its Opposition as to analogize its claims to those for constructive fraud, Opp'n at 16-17, yet disputes that Rule 9(b) applies.

The State's effort to avoid Rule 9(b)'s application to claims it describes as rooted in a "deceptive" pricing scheme cannot prevail. While the State tries to parse its "unfair" claims as challenging something other than deceptive conduct, the State affirmatively argues that its statutory claim is premised on PBMs' allegedly "misleading marketing and advertising." Opp'n 13. And the State analogizes its claims to constructive fraud. Opp'n 16–17.

There is, therefore, no serious dispute that the State's claims sound in fraud. *See Kearns*, 567 F.3d at 1125; *PNC Bank, Nat. Ass'n v. Wilson*, 2015 WL 3887602, at *7 (D. Mont. June 23, 2015); *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 957-58 (C.D. Cal. 2012); *see also Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 2628697, at *10 (C.D. Cal. Feb. 9, 2023) (collecting Ninth Circuit cases applying Rule 9(b) to nondisclosure claims). Indeed, the dictionary definition of fraud includes "an act of deceiving or misrepresenting." Fraud, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/fraud (Apr. 12, 2023); Fraud, Black's Law Dictionary (11th ed. 2019) ("deception or misrepresentation"). The State's allegations of an "Insulin Pricing Scheme" track that definition to a tee. *Compare* FAC ¶ 25 (alleging the PBMs "representations are patently false and intended to be deceptive and misleading") *with* Fraud, Black's Law Dictionary (11th ed. 2019) ("intentional deception, deceptive act or practice . . . or misrepresentation").

**B. The State fails to allege its claims with particularity.**

Rule 9(b) requires parties alleging fraud to "state with particularity the circumstances constituting fraud or mistake" by alleging "the who, what, when, where, and how of the misconduct charged" and explaining "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotations omitted). "Rule 9(b) does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (cleaned up).

The State's reliance on *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667 (9th Cir. 2018) to suggest that its "group pleading" is permissible is misguided. *Silingo* held that parallel actions can be addressed by collective allegations only where the plaintiff has alleged a fraudulent scheme that resembles a "wheel conspiracy." *Id.* at 678. As the Ninth Circuit explained, "a 'wheel conspiracy' involves 'a single member or group (the "hub") separately agree[ing] with two or more other members or groups (the "spokes").'" *Id.* (quoting Conspiracy, Black's Law Dictionary (10th ed. 2014)). But the State never mentions a "hub and spoke" conspiracy in the Complaint, nor does it claim to have alleged one now. Where (as here) a plaintiff alleges a "chain conspiracy," the complaint

"must separately identify which defendant was responsible for what distinct part of the plan." *Id.* The State's Complaint falls short.[6]

Contrary to its assertion, the State fails to "set forth the specific conduct of each PBM Defendant." Opp'n at 21-22. The allegations the State identifies, some of which purport to explain the corporate relationship between various parent and subsidiary corporations, do nothing to identify ***each defendant's*** alleged role in the supposed Insulin Pricing Scheme. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (explaining that a complaint must "inform each defendant *separately* of the allegations surrounding his alleged participation in the fraud" (emphasis added)). Even when the State purports to identify conduct by specific PBM Defendants, it improperly lumps together allegations against "Express Scripts" (six entities, plus predecessors and successors), "CVS Caremark" (five entities, plus predecessors and successors), and "Optum Rx" (three entities, plus predecessors and

---

[6] Further, the State's contention that its numerous references to "PBMs" and/or "PBM Defendants" throughout the Complaint are permissible because the "Defendants committed the same wrongful acts," is incorrect. *See* Opp'n at 22. As is apparent from the face of the Complaint, many of the entities identified by the State as "PBM Defendants," do not provide PBM services at all and are instead retail pharmacies or uninvolved corporate parents. *See, e.g.*, FAC ¶¶ 95, 135, 182 (identifying CVS Pharmacy, Inc., Evernorth Health, Inc., and UnitedHealth Group, Inc. as corporate parents); 98, 159, 163 (identifying CVS Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc. as retail pharmacies). To allege that a retail pharmacy, PBM, and parent holding company all engaged in indistinguishable wrongful acts is not just sloppy; it plainly reveals the absence of a basis in fact.

successors).  FAC ¶¶ 113, 165, 204.  Nowhere does the State allege which entity said what, when, where, or how those statements were made, or what they did to make them untruthful.  That also fails Rule 9(b).  *See United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (plaintiffs cannot "simply attribute[] wholesale all of the allegations against [employer] to the Individual Defendants."); *Pfau v. Mortenson*, 858 F. Supp. 2d 1150 (D. Mont. 2012) (dismissing complaint that "d[id] not differentiate allegations against each Defendant").

## III.    The State Fails to State a MCPA Claim Against the PBMs.

### A. The State fails to state a claim against the PBMs for deceptive practices under the MCPA.

The State has not alleged a broader array of "deceptive" conduct by PBMs than the PBMs have construed.  *Cf.* Opp'n at 23.  The allegations in the Complaint directed toward the PBMs are premised on the PBMs' purported "false representations as to the characteristics and benefits of goods and services."  FAC ¶ 513; *see also* Opp'n at 8-11.

The problem for the State is that the non-quantifiable statements by PBMs alleged in the Complaint are non-actionable under the MCPA.  As explained in the PBMs' Motion, the State fails to plead any material statement by a PBM capable of being proven false, instead relying on subjective opinions or statements of aspiration.  *See* Mot. at 13-18.  The State's only response is that the statements alleged in the Complaint "bear no resemblance to the jingle slogans and vague

statements" in the PBMs' cited authority. Opp'n at 25. Not only does this assertion lack merit, it ignores the State's complete failure to allege facts explaining how the statements identified are false or misleading, which itself provides grounds for dismissal. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) ("'[P]uffing'—expressing an opinion rather than a knowingly false statement of fact—is not misleading."). Even if the State had alleged a broader array of "deceptive" conduct by the PBMs, its MCPA claims still fail as none of those purported allegations is pled with particularity. *See supra* section II.

The State likewise fails to explain how the purported acts identified in its Opposition are deceptive or otherwise "likely to mislead consumers." *See Young v. Era Advantage Realty*, 513 P.3d 505, 513 (Mont. 2022). While the State alleges that PBMs are "excluding lower priced insulins" from formularies and have somehow "increase[d] the availability of . . . higher-priced insulins," Opp'n at 23, it does not explain how such acts (even if true) could be considered deceptive conduct under the MCPA.

Finally, the State's incorporation of its Manufacturer-specific arguments is of no consequence because the State has failed to plausibly allege a conspiracy between the Manufacturers and PBMs. *See* Mot. at 23-25; *see also* section V *infra*.

**B. The State fails to state a claim against the PBMs for unfair practices under the MCPA.**

"The Montana Supreme Court has held as a matter of law that an unfair act or practice is one which ***offends established public policy*** and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Barnes v. 3 Rivers Tel. Coop., Inc.*, 2022 WL 3212100, at *5 (D. Mont. Aug. 9, 2022) (citing *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009)) (emphasis added); *see also Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 861, n.26 (Mont. 2022) ("An unfair act or practice 'is one which ***offends established public policy*** . . .'" (emphasis added)); *Young*, 513 P.3d. at 513. The State's claim that it need not satisfy this essential element strains credulity. Opp'n at 12, n.6. The State fails to allege that the PBMs violated any public policy that "has been established by statutes [or] common law" or is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness." *Rohrer*, 203 P.3d at 763.

Recognizing this failure, the State pivots to invoking public policy as reflected in activity post-dating the challenged conduct—namely, Montana law (based on Montana legislation passed in 2022) and FTC actions (the June 16, 2022 policy statement that "inducing PBMs or other intermediaries to place higher-cost drugs on formularies instead of less expensive alternatives in a manner that shifts costs to payers and patients" may constitute unfair practices). Opp'n at 13-14 (citing Mont. Code § 33-2-2401 and June 16, 2022 policy statement). The timing of the PBM

legislation and the FTC policy statement in 2022 undercuts any argument that any alleged unfair practices over "the last fifteen years," FAC ¶ 345, were against "established" law prior to that time.

Both sources cited by the State in its Opposition are inapplicable not only because they are too recent, but also because neither prohibits the alleged conduct at issue in this case. The same Montana statute recognizes that PBM-negotiated rebates and other discounts from manufacturers are standard industry practice. Mont. Code § 33-2-2402(7)(a) (acknowledging that PBMs, among other things, "negotiat[e] rebates, discounts, or other financial incentives and arrangements with manufacturers wholesale distributors, or other third parties"). Nowhere in the Complaint, or in its Opposition, does the State explain how the PBMs' conduct, in compliance with Mont. Code § 33-2-2401, *et seq.*, could possibly reflect conduct that offends established public policy.

### C. The alleged PBM conduct falls outside the MCPA's scope.

The State's MCPA claim should be dismissed for the additional reason that none of the alleged conduct by PBMs falls within the scope of the MCPA, because the PBMs do not "advertis[e], s[ell], or distribut[e]" the at-issue drugs. *See* Mont. Code §§ 30-14-103, 30-14-102(8)(a).

The State claims that this argument is waived because the PBMs "fail to cite to any authority." Opp'n at 28. That is absurd. The relevant authority is the text of

Montana Code § 30-14-102, and "the starting point for statutory interpretation is the plain language of the statute itself." *ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*, 425 P.3d 651, 659 (Mont. 2018) (cleaned up).

The State responds by asserting that "the PBMs sell and distribute the at-issue drugs directly through their mail order pharmacies." Opp'n at 29. The State's position only highlights its deficiency in failing to state with clarity the role that any given actor is alleged to have played in the supposed scheme—instead lumping together all "Defendants," "PBMs," and even affiliate corporate entities without meaningful distinction. Mot. at 10-13. And while the State now appears to concede that its MCPA claim is applicable only to mail-order pharmacy entities, it still fails to allege any misconduct by those pharmacies, or how the supposed conduct differs from retail pharmacies not alleged to have participated in the alleged scheme.

Finally, the State's assertion that each PBM is jointly and severally liable for Manufacturers' alleged misconduct that falls under the purview of the MCPA fails because the State fails to allege a plausible conspiracy.

## IV. The State's Unjust Enrichment Claim Fails As a Matter of Law.

### A. The State's PBM contract forecloses its unjust enrichment claim.

The State acknowledges that "[u]njust enrichment is not available where there is a valid and relevant contract between the parties"—precisely the scenario here.

Mfr. Opp'n at 26 (citing *Associated Mgmt. Servs. v. Ruff*, 424 P.3d 571, 595 (Mont. 2018)).

The State has affirmatively alleged contracts that cover this dispute, thereby foreclosing its unjust enrichment claim. The Complaint includes allegations that the PBMs contract for insulin (and other products) with manufacturers (FAC ¶¶ 300-01), payors (FAC ¶¶ 350, 382-84, 464, 513), and pharmacies (FAC ¶¶ 297, 403, 513). And while the State claims these contracts are "of no consequence to the Manufacturers" who have not contracted with the State or its citizens, Mfr. Opp'n at 26, it can make no such claim with respect to the PBMs. This is because the ***Complaint affirmatively alleges that the State received at-issue PBM and pharmacy services under a PBM contract***. FAC ¶ 121. This alone bars the State's unjust enrichment claim. *Ruff*, 424 P.3d at 595; *Filler v. United Parcel Serv., Inc.*, 2021 WL 5106461, at *3 (D. Mont. Sept. 21, 2021), *report and recommendation adopted*, 2021 WL 5447460 (D. Mont. Nov. 22, 2021). Indeed, another federal court recently dismissed a nearly identical unjust-enrichment claim brought by Harris County, Texas because the claims "sound[ed] more in contract than in quasi-contract." *Harris Cnty., Texas v. Eli Lilly & Co.*, 2022 WL 479943, at *14 (S.D. Tex. Feb. 16, 2022). In the complaint's "own words, the PBM Defendants 'contract with payors'"—of which, the State is one. *Id.*; *see also* FAC ¶¶ 350, 382-84, 464, 513.

Recognizing this infirmity, the State's Opposition relies on the assertion that "[t]here is no express contract governing the dispute at-issue," because PBMs do not contract with payors "on a drug-specific basis." Opp'n at 32; FAC ¶ 532. That is a distinction without a difference. It is undisputed that the State contracts with PBMs for PBM and pharmacy services. That contract need not identify the at-issue drugs by name to govern the dispute at issue.[7]

### B. The State lacks standing to pursue a claim for unjust enrichment in its *parens patriae* capacity.

Suits brought by the State in its *parens patriae* capacity involve a quasi-sovereign interest "in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). A quasi-sovereign interest is "an interest apart from that of particular individuals who may be affected" and is ***not*** "a basis for recovery of money damages for injuries suffered by individuals." *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973); *Snapp*, 458 U.S. at 600 (*parens patriae* "concept does not

---

[7] The State's distraction that it has "alleged facts which establish each element" of an unjust enrichment claim also fails. Opp'n at 30. To the extent the PBM Defendants are not acting as the State's PBM (and the majority are not), it has not alleged that the State conferred a benefit, direct or indirect, on the PBMs at all. Neither has the State alleged that it "has a better legal or equitable right" to any benefit purportedly conferred on the PBMs through their participation in the "market" at large. *See* Opp'n at 31, n. 21; *see also* Restatement (Third) of Restitution and Unjust Enrichment, § 48 (2011) (noting that a claimant is entitled to restitution to prevent unjust enrichment only if "(as between claimant and defendant) the claimant has a better legal or equitable right" to the benefit conferred).

involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves").

In contrast, a claim for unjust enrichment arises only where a party "has and retains money which in justice and equity belongs to another." *Signal Peak Energy, LLC v. E. Mont. Minerals, Inc.*, 922 F. Supp. 2d 1142, 1149 (D. Mont. 2013) (citations omitted). As such, it is plainly an individual-specific harm requiring monetary damages for the individual.

By seeking to recover monetary damages for alleged unjust enrichment, the State seeks a remedy inconsistent with the *parens patriae* doctrine. And the State does not cite a single case authorizing a *parens patriae* claim for unjust enrichment. Opp'n at 32–33. The State has no "quasi-sovereign interest" in such a claim for monetary damages, and it makes no attempt to identify one. Instead, the State merely suggests that its "right to equitable relief cannot be limited" because the MCPA authorizes the Court to "'enter any other order or judgment required by equity to carry out' the statute's provisions." Opp'n at 33 (quoting Mont. Code § 30-14-131(3)). But the provision the State cites sets forth potential remedies available under an MCPA claim; it does not create the right to pursue a separate cause of action for unjust enrichment.

## V. The State Fails to Plausibly Allege a Civil Conspiracy Involving the PBMs.

Because the State's underlying causes of action fail as a matter of law, its civil conspiracy claim also must be dismissed.  *Simmons Oil Corp. v. Holly Corp.*, 852 P.2d 523, 530 (Mont. 1993).

Additionally, the State's civil conspiracy claim against the PBMs fails because it has not plausibly alleged a "meeting of the minds" among the PBMs or between the PBMs and Manufacturers.  *See T-4 Corp. v. McDonald's Corp.*, 2017 WL 3037422, at *7 (D. Mont. July 17, 2017) (dismissing civil conspiracy claim where plaintiff only alleged "the existence of an agreement"); *Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 13130862, at *9 (D. Mont. May 18, 2011) (dismissing civil conspiracy claim based on conclusory allegations that defendants agreed to engage in a conspiracy).

The State's conclusory allegations of an agreement are not entitled to *assumptions* of truth; rather "[t]here must be factual allegations of further circumstances pointing toward a meeting of the minds between the alleged co-conspirators."  *See Paatalo*, 2011 WL 13130862, at *9 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The State fails to distinguish the Complaint from the allegations in *T-4 Corp* and *Paatalo*.  While the State purports to have "provided detailed allegations demonstrating the coordinated efforts between the PBMs and Manufacturers," it merely points to its response to the Manufacturers'

motion to dismiss, in which it rehashes the ***Manufacturers' practice of "lockstep price increases*,"** but does not identify what acts, if any, suggest a meeting of the minds **among the PBMs** or **between the PBMs** and Manufacturers. *Id.*; Mfr. Opp'n at 30-32.

The State has set forth no factual allegations pointing toward a meeting of the minds on a goal to be accomplished or on a course of action to be taken, let alone a meeting of the minds to commit any unlawful act.

## VI.    The Court Should Dismiss the PBMs' Corporate Parents and Uninvolved Affiliates.

"It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Thus, "a parent-subsidiary relationship by itself is insufficient to impute liability." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020).  The State's claims against Evernorth Health, Inc., CVS Pharmacy, Inc., OptumInsight, and UnitedHealth Group, Incorporated in contravention of this general principle require dismissal.

The State explicitly disavows any theories of agency or alter ego liability and instead asserts that the PBM "parents were directly involved in the Insulin Pricing Scheme."  Opp'n at 38.  Despite this assertion, the State's Opposition identifies no such conduct by any PBM corporate parent, and the Complaint alleges none.  *See*

Opp'n at 35-38.  While the State points to allegations that CVS Pharmacy operates retail pharmacies and provides retail pharmacy services, FAC ¶¶ 93-98, those allegations are of no consequence as the State has not pled any misconduct by *retail pharmacies*—as opposed to PBMs or drug manufacturers.  CVS Pharmacy's standard practices of collecting payment for drugs dispensed and retaining the difference between the amount at which a product is purchased and the amount for which it is sold, *like all retail pharmacies*, cannot plausibly support an inference that CVS Pharmacy was involved in any alleged scheme.  Similarly, the allegation that OptumInsight "analyzed data," FAC ¶¶ 193, 196, fails to connect OptumInsight to any conduct giving rise to the purported "Insulin Pricing Scheme." And the State advances no argument whatsoever regarding PBM parents Evernorth Health, Inc. and UnitedHealth Group, Incorporated, alleging only that they are the "immediate or indirect parent of pharmacy and PBM subsidiaries that operate throughout Montana." FAC ¶¶ 135, 182-83.  That is not enough.

## CONCLUSION

The Court should dismiss the State's claims against the PBM Defendants with prejudice.

 Dated: April 28, 2023                    Respectfully submitted,

                                          *s/ Chad E. Adams*
                                          J. Daniel Hoven
                                          Chad E. Adams
                                          Megan E. Wampler

BROWNING, KALECZYC, BERRY &
HOVEN, P.C.
800 N. Last Chance Gulch, Ste. 101
Helena, MT 59601
(406) 443-6820 (p)
(406) 443-6883 (f)
dan@bkbh.com
chad@bkbh.com
meganw@bkbh.com

Jason R. Scherr (*pro hac vice*)
Patrick A. Harvey (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS
1111 Pennsylvania Ave. NW
Washington, DC 20004
(202) 739-3000 (p)
(202) 739-3001 (f)
jr.scherr@morganlewis.com
patrick.harvey@morganlewis.com

*Attorneys for Evernorth, Inc., Express
Scripts, Inc., Express Scripts
Administrators, LLC, ESI Mail
Pharmacy Service, Inc., and Express
Scripts Pharmacy, Inc.*

*s/ Bruce F. Fain*
Bruce F. Fain
Nicholas A. Muñoz
CROWLEY FLECK PLLP
500 Transwestern Plaza II
490 North 31st Street
P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-3181
bfain@crowleyfleck.com
nmunoz@crowleyfleck.com

Enu Mainigi (*pro hac vice*)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
A. Josh Podoll (*pro hac vice*)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

*Attorneys for CVS Pharmacy, Inc.,
Caremark Rx, L.L.C., Caremark,
L.L.C., CVS Health Corporation, and
CaremarkPCS Health, L.L.C.*

s/ Katherine S. Huso
Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & HUSO, P.C.
2812 1st Avenue North, Suite 225
Billings, MT 59101
Phone: (406) 252-5500
Fax: (406) 252-4613
cmatovich@mkhattorneys.com
khuso@mkhattorneys.com

Brian D. Boone (*pro hac vice*)
ALSTON & BIRD LLP
101 S. Tryon St., Ste. 4000
Charlotte, NC 28280
Phone: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Elizabeth Broadway Brown (*pro hac vice*)
Jordan Elise Edwards (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree St., N.W., Ste. 4900
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Fax: (404) 881-7777
liz.brown@alston.com
jordan.edwards@alston.com

*Attorneys for UnitedHealth Group Incorporated, OptumRx, Inc., and OptumInsight, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 4,809 words, excluding captions, certificate of compliance, table of contents and authorities, exhibit index, and certificate of service. In making this certification, I relied on the word count function in Microsoft Word, which was used to prepare this brief.

*s/ Chad E. Adams*